STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-06-46
JLH -PEN- /*

FILED & ENTERED
SUPERIOR COURT

DEC 1 4 2007

PENOBSCOT COUNTY

Teresa L. Harvey et al.,
Plaintiffs

v.

Decision and Judgment
(Title to Real Estate is Involved) APPRECHT
DONALD
LAW LIBR...

JAN 2 5 2008

Jeffrey B. Dow, Sr. et al.,
Defendants

Hearing on the complaint and counterclaim was held on July 9 and 10, 2007. On both hearing dates, all parties were present with counsel.

Defendants Jeffrey B. Dow, Sr. and Kathryn L. Dow are the parents of plaintiff Teresa L. Harvey and defendant Jeffrey B. Dow, Jr.[1] Plaintiff Craig A. Dyer was Harvey's domestic partner; the two now live in the same residence but no longer have a romantic relationship. The central issue in the case flows from Harvey's contention that she is entitled to acquire record title to a parcel of land now owned by her parents.

The court finds the following facts. Jeffrey Sr. and Kathryn own two abutting parcels of land in Corinth. They acquired the first parcel, which is 75 acres, in 1988. *See* plaintiffs' exhibit 1. This parcel became the site of the family home, and the family lived there from the time Teresa and Jeffrey Jr. were young. The following year, Jeffrey Sr. and Kathryn acquired the second parcel, which is 50 acres, *see* plaintiffs' exhibit 2, to protect it from development. *See also* plaintiffs' exhibits 3 and 4 (tax map and sketch of parcels). Over the years, Teresa and Jeffrey Jr. expressed an interest in eventually acquiring portions of their parents' land holdings, and they even expressed preferences for which parts of the parcels they hoped to obtain. Teresa was interested in at least a portion of the 50-acre parcel, and Jeffrey Jr. wanted part of the 75-acre parcel. Further,

---

[1] For ease of reference and not as a sign of disrespect, the court will refer to the members of the Dow family by their first names.

1

both Jeffrey Sr. and Kathryn made it known to their children that eventually they (Teresa and Jeffrey Jr.) would end up with the land. However, Jeffrey Sr. and Kathryn did not formulate or communicate a specific plan about when or under what circumstances they would transfer ownership of the land to their children, and they did not make any specific decisions even about the of the boundaries of the parcels that Teresa and Jeffrey Jr. would ultimately receive. Rather, they approached the issue in a non-specific way and had only a general plan to leave the property to their children when they died or to give the property to them when they were older.

In 1999, with permission from Jeffrey Sr. and Kathryn, Teresa made arrangements to put a mobile home on the front portion (i.e., closest to the road) of the 50-acre parcel. Members of the Dow family helped to prepare the site, and Teresa paid contractors to provide power and other utilities. She and her then-boyfriend, Jared Harvey, purchased a mobile home, moved it to the property and began living there in 1999. They were married the following year. They also built a garage near the mobile home, obtaining a building permit by filing with the town a written statement signed by Jeffrey Sr, confirming that he authorized Jared and Teresa to build the structure "on our land." *See* plaintiff's exhibit 5. Teresa never asked either of her parents for a deed to all or any portion of the parcel, and she did not pay them rent for the use of the land.

After several years, Teresa and Jared decided that they wanted a larger residence. They initially planned to build a house near the site of the mobile home, near the road. However, because of the contours of that area, the cost of site preparation would be substantial, and they decided that they wanted to build the new house further in on the 50-acre parcel, at a location near a spring that Teresa had always liked. Even with the additional expense of building a house away from the road, it made financial sense to take that course because they would save the cost of importing a considerable amount of fill that would have been necessary if they built closer to the mobile home site. In early 2003, Teresa and her parents discussed her interest in building a new home, and Jeffrey Sr. agreed to the plan.

Teresa and Jeffrey Sr. had some preliminary discussion about a transfer of title, as Teresa considered the possibility of obtaining financing through a mortgage, which of course would require her to own the property to be used as security. Teresa worked for a

2

local bank and took steps to become pre-qualified for financing. In that context, Teresa and Jeffrey Sr. had a conversation with the town's code enforcement officer about the minimum amount of road frontage that would be required for a parcel. Subsequently, Teresa asked her parents to borrow money on a home equity line secured by the property, because the expenses associated with a loan on the home equity line were lower than the expenses that would be incurred with a mortgage. However, in March 2003, Jared tragically died in a motor vehicle accident. Nonetheless, Teresa went forward with her plan to build the new house, and she financed the construction with life insurance proceeds she received after Jared died. Therefore, she did not need financial assistance from her parents.

Teresa proceeded to build the house, first obtaining a building permit in which Jeffrey Jr. was identified as the landowner and a septic permit in which Teresa incorrectly identified herself as the owner. *See* plaintiffs' exhibits 7, 8. A number of family members, including Jeffrey Sr., Jeffrey Jr. and Teresa's grandfather made important contributions toward the construction effort. Teresa moved into her new house in May 2004. Her actual construction expense was approximately $200,000. She has never paid rent to her parents, and the driveway to her house branches off the driveway that provides access to her parents' house and to a sawmill located near her parents' house. (Jeffrey Jr. runs the mill operation.) Teresa intended to build the house on the fifty-acre parcel. However, the evidence reveals a substantial question about whether in fact the house is located on that parcel or on the seventy-five acre parcel.

Later in 2004, Jeffrey Jr., with the permission of Jeffrey Sr. and Kathryn, moved a mobile home onto the fifty-acre parcel, and located near where Teresa's mobile home had been sited. Around this time, the relationship between Jeffrey Jr. and Teresa began to deteriorate, and similarly Teresa's relationship with her parents became strained.[2] For a period of time after Teresa moved into her new house, she asked Jeffrey Sr. to give her a deed to the property where she now lived. He declined to do so.

---

[2] Jeffrey Jr. borrowed money from Teresa, and she ended up filing a civil suit against him. Teresa's relationship with her parents became so difficult that they filed a grandparents' visitation rights action to be able to have contact with Teresa's children.

3

Teresa has brought this action against Jeffrey Sr. and Kathryn, ultimately seeking an order requiring them to convey land to her or to compensate her for the cost she incurred to build her house. As legal vehicles for these alternate forms of relief, she has raised claims for breach of contract, breach of fiduciary duty and fraud.

Each of those theories rests on the factual predicate that Jeffrey Sr. or Kathryn made an enforceable promise to Teresa that one or both of them would convey property to her. Teresa has not proven this allegation. At best, Jeffrey Sr. expressed a willingness to agree to make such a conveyance; in other words, that evidence at most reveals that Jeffrey Sr. expressed an intention to enter into an agreement to convey property sometime in the future. "A mere declaration of intention to enter into an agreement at some time in the future, even if the terms are stated with definite specificity, is not an offer which can be accepted to form a binding contract." *Zamore v. Whitten*, 395 A.2d 435, 440 (Me. 1978).

Teresa has not proven that either Jeffrey Sr. or Kathryn entered into an actual agreement to convey real property to her. Kathryn had made it clear that eventually, both Teresa and Jeffrey Jr. would end up with all or part of the two parcels. Similarly, at various times, Jeffrey Sr. talked with Teresa about such a conveyance. However, as Teresa herself acknowledged during her trial testimony, neither of her parents communicated essential information about such a conveyance that would make it reasonable for her to conclude that she had the power, through a manifestation of assent, to bind them to an obligation to convey an ownership interest in the property. Most importantly, neither Kathryn nor Jeffrey Sr. ever described the boundaries of the land that Teresa would acquire. Teresa was able to testify only with great generality that she expected that her father would convey to her the land at the location of her new house. However, although she had had her sights set on the fifty-acre parcel, the evidence does not clearly establish whether the parcel is even located on that parcel or the adjoining seventy-five acre parcel. Further, as the plaintiffs have alleged in the complaint itself, Jeffrey Sr. had made clear to Teresa that he did not want to convey or otherwise affect a hayfield, which is located on the fifty-acre parcel between the road and the site of her new house. Teresa also acknowledged that even in her view, she and her father had not established the amount of land that she now claims. By itself, the lack of certainty on

4

issues as basic as the location of the boundaries or of size of the parcel means that there cannot be an enforceable contract here, *see Sullivan v. Porter*, 2004 ME 134, ¶ 14, 861 A.2d 625, 631, because it would be impossible for the court to frame a remedy: the record does not reveal what land would be conveyed to Teresa through an order of specific performance. *See* RESTATEMENT (SECOND) OF CONTRACTS ("Restatement") § 33(2) (1981). The absence of certainty and specificity is powerful evidence that although Jeffrey Sr. told Teresa that he would be willing to convey some property to her at some future date, it was not reasonable for Teresa to conclude that he had made an enforceable offer that would give her the present right to acquire some land from him. *See id.* § 33(1).

There also exist other uncertainties about the prospective conveyance that Teresa seeks. For example, there was no discussion about consideration: it appears that Teresa assumed that she would be given the land as a gift.[3] Kathryn had made statements previously that she and Jeffrey Sr. would give all or some of the land to Teresa and Jeffrey Jr. at some time in the future or through inheritance. However, such statements do not constitute persuasive evidence that any such conveyance under these circumstances would be without consideration. Also, as Teresa acknowledged, neither Jeffrey Sr. nor Kathryn discussed with her or made statements to her about the nature of the instrument that would be used to effect the conveyance. These uncertainties are plainly less significant than the fundamental vagueness about the boundaries or the size of the parcel Teresa claims here. Nonetheless, they add to the overall lack of clarity regarding the terms of any prospective conveyance discussed by either Jeffrey Sr. or Kathryn.

For these reasons, Teresa is not entitled to relief on any of her claims relating to the real property. Because she has not established that Jeffrey Sr. or Kathryn made an enforceable offer of land to her, they cannot be seen to have breached a contract, for the

---

[3] If Jeffrey Sr. or Kathryn had made an offer to convey some land to Teresa, and if that offer was adequate to create a contract upon Teresa's acceptance of it, then the absence of any consideration might not undermine Teresa's claim that she is entitled to contract-based relief. Instead, she could obtain such relief by establishing, among other things, that she acted to her detriment by reasonably relying on a promise to perform. *See generally* Restatement § 90; *see also Bigelow v. Bigelow*, 93 Me. 439, 452 (1900).

simple reason that they did not made an offer that could have resulted in the formation of a contract. This result obtains irrespective of whether they stood in a confidential relationship with Teresa (as is alleged in count 2 of the complaint),[4] or whether the claim is examined under conventional principles of contract law. Because of this conclusion, the court need not and does not reach the other arguments urged by the defendants, including one based on the statute of frauds.

Teresa has also made a claim against Jeffrey Jr., alleging that he damaged the garage she built near her mobile home (which is the portion of the fifty-acre parcel where Jeffrey Jr. now lives), by breaking into the structure and by piling snow against it. It appears that Dyer also is pursuing a claim that Jeffrey Jr. damaged personal property that he stored inside the garage. The plaintiffs have not proven that Jeffrey Jr. engaged in any such actionable conduct.

Teresa also seeks recovery of certain items of personal property that she alleges are in the possession of her parents. Those items are listed in plaintiffs' exhibit 11. At trial, Kathryn identified which of these items are presently in her possession. Teresa is awarded all of those items that Kathryn says she has (including the wedding dress, without a requirement that Teresa reimburse Kathryn for preservation costs that she has paid, and including the Halloween costumes), except for Alley, a horse. Although Alley remains registered to Teresa, the best evidence is that Teresa has not done anything to maintain the animal during the last 15 years, that Kathryn has cared for Alley during that time and that Kathryn and Jeffrey Sr. have even built a shelter (a barn or lean-to) for Alley.

Teresa also alleges that the defendants have interfered with her use and enjoyment of her home because, she claims, they plowed snow into her driveway, thereby blocking

---

[4] Teresa's claim that her parents owed a fiduciary duty to her is suspect because, despite the familial relationship among the parties, she lived functioned independently of her parents. Her employment in a management position with a bank evidences a level of sophistication that would tend to undermine a claim that she was dependent on her parents or that she was otherwise compromised in a way that would lead to a confidential relationship with them. See, e.g., Stewart v. Machias Savings Bank, 2000 ME 207, ¶ 10, 762 A.2d 44, 46. Nonetheless, because Teresa has failed to prove in the first place that Jeffrey Sr. or Kathryn presented her with an enforceable offer, the nature of their relationship loses legal significance, and the court does not adjudicate the issue.

6

it. The court cannot find that any such occurrence left more than an incidental amount of snow when the plow was used to clear the driveway extending to the house occupied by Jeffrey Sr. and Kathryn and to the sawmill. Any additional factual basis for the nuisance claim[5] is not sufficient to allow judicial relief.

Finally, Jeffrey Sr. and Kathryn have filed a counterclaim against Dyer, alleging that he drove a vehicle on their land and caused damage to it. The evidence establishes that at times, Dyer drove vehicles (that Dyer describes as "mudrunning trucks") on their land. When Dyer was instructed not to drive on the property, he stopped. However, the evidence does not establish that he in fact caused damage that would constitute the basis for relief under common law or statutory principles.

The entry shall be:

On counts 1, 2, 3, 4, 6 and 7 of the complaint, judgment is entered for the defendants. On count 5 of the complaint, judgment is entered for plaintiff Teresa L. Harvey. Defendant Kathryn L. Dow shall return to Teresa L. Harvey the items of personal property identified in this order.

On count 1 of the counterclaim, judgment is entered for counterclaim plaintiffs Jeffrey B. Dow, Sr. and Kathryn L. Dow. They shall not be required to convey to counterclaim defendant Teresa L. Harvey all or any portion of the real property described in either of the deeds recorded in book 4257 page 101 and in book 4581 page 337 of the Penobscot County Registry of Deeds. On count 2 of the counterclaim, judgment is entered for counterclaim defendant Craig A. Dyer.

The defendants are awarded their costs of court.


Dated: December 13, 2007

_____
Justice, Maine Superior Court
Jeffrey L. Hjelm

---

[5] Teresa and Dyer, for example, presented evidence that early one morning, Kathryn made an obscene gesture at Dyer and that, at a different time, Kathryn instructed Teresa and Dyer not to use the common portion of the driveway, which provides access to the driveway leading to Teresa's house. This restriction was short-lived and does not warrant an award of damages.

7

TERESA L HARVEY ET AL VS JEFFREY B DOW SR ET AL
UTN:AOCSsr  -2006-0021800                    CASE #:BANSC-CV-2006-00046
------------------------------------------------------------------------
SEL VD                          REPRESENTATION TYPE      DATE
01 0000003904 ATTORNEY:BEAROR, EDMOND
ADDR:84 HARLOW ST PO BOX 1401 BANGOR ME 04402-1401
     F FOR:JEFFREY B DOW, SR              DEF      RTND   04/06/2006
     F FOR:KATHRYN L DOW                  DEF      RTND   04/06/2006
     F FOR:JEFFREY B DOW, JR              DEF      RTND   04/06/2006


02 0000002216 ATTORNEY:WEEKS, PAUL A
ADDR:82 COLUMBIA STREET BANGOR ME 04401
     F FOR:TERESA L HARVEY  all Defts     PL       RTND   03/01/2006




                       *More Attorneys*
         Enter Option: A=Add, B+Sel=Browse, M=More, R+Sel=RltnEdit:M

Select the EXIT KEY for page selection line.

STATE OF MAINE                    SUPERIOR COURT
PENOBSCOT, SS.                    CIVIL ACTION
                                 Docket No. CV-06-46
                                 JLH-PEN - 1/25/2008

DON          RURECHT
              ARY
Teresa L. Harvey et al.,
        Plaintiffs

                        JAN 3 0 2008

                                          FILED & ENTERED
                                          SUPERIOR COURT

        v.                      Order      JAN 2 3 2008

                                          PENOBSCOT COUNTY


Jeffrey B. Dow, Sr. et al.,
        Defendants


        The court grants the plaintiffs' motion for enlargement of time to file post-trial

motions. Their motion for further findings and conclusions, to amend the judgment and

for a new trial is deemed timely.

        The court denies the plaintiffs' motion to amend the judgment and for a new trial.

The focus of the plaintiffs' motions, including their motion for further findings of fact

and conclusions of law, rests on the theory that they are entitled to relief because they (or,

at least, Teresa Harvey) reasonably relied on a promise made by her parents to convey

title to land.[1] A "promise" that can be enforced is defined as "a manifestation of intention

to act or refrain from acting in a specified way, so made as to justify a promisee in

understanding that a commitment has been made." Restatement at § 2 (made applicable

to a claim based on a theory of promissory estoppel under section 90 of the Restatement,

in Restatement at § 90, Reporters Notes, cmt. a). A "promise" that can give rise to

enforcement under section 90 is subject to the same requirements as an offer to enter into

---

[1] In their opposition to the plaintiffs' post-trial motion, the defendants argue among other
things that the plaintiffs did not plead a claim based on promissory estoppel. Although it
was not made express in the complaint, the court views promissory estoppel as a
contract-based cause of action, because reasonable reliance may allow enforcement of a
promise that might not be enforceable otherwise for lack of consideration. *See generally*
RESTATEMENT (SECOND) OF THE LAW OF CONTRACTS (Restatement) § 90 (1981).


1

a contract. *See id.* § 24, cmt. a (including a proposal to exchange "promises" as one type of offer).

As the court discussed in the order dated December 13, 2007, none of the statements made by Jeffrey Sr. or Kathryn rose to the level of an offer that would be sufficient, if accepted, to create a contract. Similarly, their statements were not promises that could be enforced even if they were the subject of detrimental reliance. Framed in terms of the requirements established in the Restatement, the defendants did not make a "commitment" to convey land to Harvey as she has alleged. It would be impossible to establish and identify the legal interests that would flow from enforcement of their statements of a intention to transfer title at some unspecified time in the future. As is noted among the findings set out in the court's decision, both the boundaries and quantity of land would be unknowable, based on the record. Indeed, the plaintiffs' attempt in the motion at bar to describe what portions of land should be conveyed to Harvey, and their proposed creation even of an easement – something that may not have been mentioned at all in the evidence, demonstrates that it would be impossible to define with any precision or clarity the contents of any "promise."[2] Therefore, for the reasons set out in the decision, as amplified in this order, the court concludes that the plaintiffs have not established that Harvey received an offer or promise that can be enforced in this action.

Harvey also argues in the motion at bar that she is entitled to an award of compensatory damages because of the defendants' "usurpation of her property." The evidence does not bear out this contention. The defendants have made no claim to the structures that Harvey built. Rather, Harvey chose to erect those buildings on land that was not hers and, as is reflected in the adjudication of her claims in this case, to which she did not have an enforceable claim.

The entry shall be:

---

[2] As the court noted in its decision, Harvey had maintained that her parents promised to convey to her all or part of the 50-acre parcel. However, her new house may not even be located on that lot; rather, it may well be sited on the abutting 75-acre parcel to which she has never expressed an interest. In this regard, the penultimate full sentence on page 4 of the Decision and Judgment should read, ". . .the evidence does not clearly establish whether the <u>residence</u> is even located on that [50-acre] parcel or the adjoining seventy-five acre parcel."

2

The plaintiffs' motions for enlargement of time to file post-trial motions are granted. Their motion for further findings and conclusions, to amend the judgment and for a new trial is deemed timely.

Except to the extent set out in this order, the plaintiffs' motion for further findings and conclusions is denied. The plaintiffs' motion to amend and motion for new trial are denied.

Dated: January 23, 2008

_____
Justice, Maine Superior Court

3

TERESA L HARVEY ET AL VS JEFFREY B DOW SR ET AL
UTN:AOCSsr  -2006-0021800                   CASE #:BANSC-CV-2006-00046
--------------------------------------------------------------------------
TERESA  L. HARVEY                                          PL
  ATTY WEEKS, PAUL A.


CRAIG  A. DYER                                             PL
  ATTY WEEKS, PAUL A.


JEFFREY  B. DOW, SR , *Kathryn Dow, Jeffrey Dow*          DEF
  ATTY BEAROR, EDMOND




M=More, Space = Exit:M

Select the EXIT KEY for page selection line.

TERESA L HARVEY ET AL VS JEFFREY B DOW SR ET AL
UTN:AOCSsr  -2006-0021800                    CASE #:BANSC-CV-2006-00046
-------------------------------------------------------------------------
TERESA  L. HARVEY                                              PL
ATTY WEEKS, PAUL A.


CRAIG  A. DYER                                                 PL
ATTY WEEKS, PAUL A.


JEFFREY  B. DOW, SR , _Kathryn Dow, Jeffrey Dow_              DEF
ATTY BEAROR, EDMOND




M=More, Space = Exit:M

Select the EXIT KEY for page selection line.

STATE OF MAINE                              SUPERIOR COURT
PENOBSCOT, SS.                             CIVIL ACTION
                                              Docket No. CV-06-46

Teresa L. Harvey et al.,
    Plaintiffs


v.                                     Order (Motion for New Trial)

Jeffrey B. Dow, Sr.,
    Defendants

FILED AND ENTERED
SUPERIOR COURT

MAR 19 2003

PENOBSCOT COUNTY

The plaintiffs have moved for a new trial pursuant to M.R.Civ.P. 59(a) and 60(b). The court has considered the parties' submissions on the motion and denies it.

As the only procedural basis for the post-judgment relief they seek here, the plaintiffs contend that there exists "newly discovered evidence that was not available at trial," thereby justifying a new trial. All of the proffered evidence underlying their motion, however, is of several incidents that occurred after the trial was held. In other words, the new evidence was not available at trial, because it did not exist at the time of that trial. The Law Court has held that, at least in the context of a rule 60(b)(2) motion, evidence of matters that occurred subsequent to a trial cannot constitute such "newly discovered evidence" within the meaning of that rule. *MacPherson v. MacPherson*, 2007 ME 52, ¶ 9, 919 A.2d 1174,1176. This is dispositive of the plaintiffs' rule 60(b) motion as they have framed it. To the extent they seek similar relief under rule 59(a), the court would reach the same conclusion.

Even if the plaintiffs had cast their argument more broadly than one of newly discovered evidence, the informational basis for the motions would not warrant a new trial. There are two aspects to that factual predicate. First, they allege that one or more defendants have made post-judgment claims to a structure based on their interpretation of the court's judgment. Any such construction of the outcome of the case would not justify a new trial, because it is not enough call into substantial question the defendants' contention *at trial* (i.e., prior to the time the court issued its judgment that they allegedly

cite as a basis for their more recent actions) that they were not making a claim to the structure.[1]

The second aspect of the new evidence concerns a post-judgment altercation between Harvey and her father and brother, who are co-defendants. As they state in their motion, the plaintiffs proffer this evidence on the question of bias and credibility. However, the trial evidence clearly revealed the level of animosity among the parties, including several instances of litigation. This new evidence therefore only is cumulative to similar evidence that the court already considered. Further, as is discussed in the court's decision and judgment, the plaintiffs' case suffered from the principal shortcoming that, even by Harvey's own testimony, neither of her parents expressed a donative intention that would be sufficient to allow the enforcement of any statement that, sometime in the future, they would convey land to her. Any such statements made by Harvey's parents did not carry the specificity that would be needed to determine the parties' rights and liabilities because, for example, one could not even determine the locations of the boundaries. Harvey's parents' statements were too general to support any specific relief. Therefore, they were also too general to support the conclusion that there was a meeting of the minds and to support the conclusion that she could reasonably act in reliance on any such statement of future intention.

The entry shall be:

For the foregoing reasons, the plaintiffs' motion for new trial is denied.

Dated: March 17, 2008

_____
Justice, Maine Superior Court
Jeffrey L. Hjelm

---

[1] In this regard, the court notes that the plaintiffs' complaint did not include a count for unjust enrichment, which would allow consideration of the amount by which they enhanced the real property owned by Harvey's parents. Rather, her claim to the land was based on contract.

TERESA L HARVEY ET AL VS JEFFREY B DOW SR ET AL
UTN:AOCSsr  -2006-0021800                    CASE #:BANSC-CV-2006-00046
-------------------------------------------------------------------------
SEL VD                                 REPRESENTATION TYPE      DATE
01 0000003904 ATTORNEY:BEAROR. EDMOND

     F FOR:JEFFREY B DOW, SR                 DEF        RTND  04/06/2006
     F FOR:KATHRYN L DOW                     DEF        RTND  04/06/2006
     F FOR:JEFFREY B DOW, JR                 DEF        RTND  04/06/2006

02 0000002216 ATTORNEY:WEEKS, PAUL A

     F FOR:TERESA L HARVEY                    PL        RTND  03/01/2006




                         *More Attorneys*
            Enter Option: A=Add, B+Sel=Browse, M=More, R+Sel=RltnEdit:M

Select the EXIT KEY for page selection line.

STATE OF MAINE                          SUPERIOR COURT
PENOBSCOT, SS.                          CIVIL ACTION
                                        Docket No. CV-06-

FILED & ENTERED
SUPERIOR COURT

JUL 3 0 2009

PENOBSCOT COUNTY

Teresa L. Harvey et al.,
     Plaintiffs

          v.                            Post-Remand Decision and Judgment
                                        (Title to Real Estate is Involved)

Jeffrey B. Dow, Sr. et al.,
     Defendants


     Following appellate review of the decision and judgment dated December 13,
2007, the Law Court has remanded this matter for further consideration of plaintiff
Teresa L. Harvey's alternative claims that her parents, defendants Jeffrey B. Dow, Sr. and
Kathryn L. Dow, either have a present legal obligation to convey to her a portion of
property that they own, or that they are liable to her for expenses she incurred when she
constructed a residence on that property. The court has considered the parties' written
arguments filed in light of the Law Court's opinion vacating part of the judgment.

     The focus of the Law Court's mandate relates to Harvey's contention that the
Dows promised to convey land to her and that this promise has become legally
enforceable, because she reasonably relied on that promise to her detriment when, with
the knowledge of both her parents and the active assistance of her father, she constructed
a residence on her parents' land. This claim is rooted in a theory of promissory estoppel.
Under that doctrine,

> [a] promise which the promisor should reasonably expect to induce action or
> forbearance on the part of the promisee or a third person and which does induce
> such action or forbearance is binding if injustice can be avoided only by
> enforcement of the promise. The remedy granted for breach may be limited as
> justice requires.

*Harvey v. Dow*, 2009 ME 192, ¶ 11, 962 A.2d 322, 325, *quoting* Restatement (Second) of
Contracts (Restatement) § 90(1) (1981)). Promissory estoppel is a feature of a contract
that is formed, and that becomes legally enforceable, without consideration. (It is

1

included in that part of the Restatement that examines contracts without consideration.) As one commentator has noted,

> The classic application of the doctrine of promissory reliance occurs where a gratuitous promise induces detrimental reliance. The promise induces the detriment but the detriment does not induce the promise. Since both elements are necessary to constitute the bargained-for-exchange element of consideration, consideration is absent and the separate validation device of detrimental reliance is found to enforce the promise.

JOHN EDWARD MURRAY, JR., MURRAY ON CONTRACTS § 93 (1974).

Therefore, a contact that is enforceable as a result of reasonable detrimental reliance is founded on the same elements as a conventional contract, except that it is not supported by consideration provided or promised by the promisee to the promisor. Rather, the promisee's reasonable detrimental reliance on the promise renders the promise enforceable even in the absence of consideration. This means that there must be an agreement between the parties: the promisor must convey a promise to the promisee, and if the promisee then reasonably acts on that promise to his detriment, the promisor is estopped from denying or renouncing the promise. However, this outcome is predicated on a promise that is sufficient to define the rights of the parties. Because a contract arising from the promisee's detrimental reliance is a contract that creates the same rights and liabilities as one arising conventionally (that is, with an offer; an acceptance of that offer; and consideration, *see* Restatement § 17(1)), the nature of the promise is the same in either case.

"A promise is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." Restatement § 5(1). Here, as is set out in the original judgment, the court found when one or both of the Dows made statements to Harvey about her future rights to a portion of their land, those statements were too generalized to form the basis for a *present* contractual obligation to convey any property to her. *See* Decision and Judgment at 5 ("The absence of certainty and specificity is powerful evidence that although Jeffrey Sr. told Teresa that he would be willing to convey some property to her at some future date, it was not reasonable for Teresa to conclude that he had made an enforceable offer that would give her the *present* right to acquire some land from him." (Emphasis

2

added.)) Similarly, when Harvey's father consented to the construction of a house on land that he and his wife owned, there did not arise any particular content or definition to the nature of the legal obligation they might owe to Harvey beyond an implied promise that she ultimately would acquire the land under the building. The construction process and the end result, in other words, did not operate to reveal how much land Harvey would be entitled to receive or where the boundaries of that land might lie.

The court fully recognizes that when the Dows promised to Harvey that *at some time* she would be entitled to acquire title to some portion of their land, and then when Jeffrey Dow Sr. actively participated in helping to build that house, the Dows' promise to convey that presently undefined portion of land to her may have become enforceable. However, the Dows' statements to Harvey – and her father's conduct – did not establish when they would become obligated to convey ownership of any land to her. Indeed, their communications were highly generalized and suggested only that sometime, either by *inter vivos* gift or by legacy, she would end up with some of the land that they now own. Similarly, the nature of the Dows' obligation to convey land to her has not been defined, because they did not promise to give her any particular part of their land. Therefore, the Dows' promises to Harvey that at some future time she would acquire land from them, coupled with Harvey's construction of a house on that land, will require the Dows (or their estate) to convey some land to her. As the Court noted, she will be entitled to acquire title to the land on which the house sits. 2008 ME 192, ¶ 15, 962 A.2d at 326; *see* note 1 *infra*. There is no evidence, however, that the Dows promised to give Harvey any land exceeding the footprint of the house. (The promise to that land is merely implied, revealed through the very fact that Jeffrey Dow Sr. knew where Harvey was building his house as he helped her in that endeavor.)

However, Harvey's essential claims are that she has *present* rights to ownership of land or, alternatively, *present* rights to compensation for the improvements she made to it. As is noted above, the Dows are subject to a limited enforceable obligation to perform sometime in the future. However, if judgment were entered for Harvey now, then this court – rather than the parties – would be creating the terms of their contract. Harvey chose to build a house on property that was not hers but rather belonged to members of her immediate family, and she did so although, even though the house itself

3

would be hers, there was no promise about when she could take title to the land. A judgment compelling the defendants to convey title to Harvey now would give her a remedy that goes beyond the rights she acquired through the Dows' promises to her, because those rights did not include an entitlement to present ownership (or, alternatively, to a present award of compensation for failure to receive present ownership).

Further, she decided to proceed with the construction project knowing that the Dows' promises did not identify or define the area and location of the land that would become hers, aside from the land underneath the structure itself.[1] Even without that

---

[1] In its decision on appeal, the Law Court noted that a promise could be implied for the defendants to convey a parcel "[a]t least as to the land on which Teresa's house now sits . . . ." 2008 ME 192, ¶ 15, 962 A.2d at 326. The Court then suggested that the Dows' refusal to convey that land to Harvey could be seen as fraudulent. Fraud is one of the evils that the doctrine of promissory estoppel works to prevent, because it estops the promisee from denying the truth of a representation or promise that has induced detrimental reliance by the promisee. Restatement § 90, cmt. 1. However, the Dows did not promise Harvey that she could have the property at the time she was constructing the house or, for that matter, at any particular time prior to their deaths. Further, when the house was being built, Harvey and her parents were on good terms. Therefore, the mere fact that she was constructing a home on her parents' land does not mean that by refusing to convey land to her after the relationship soured, the Dows ended up working a fraud on her. Although they promised that she would acquire some land at some time, the Dows simply did not give Harvey a reasonable expectation interest of when this would happen. That the parties' relationship deteriorated subsequent to all of these events – including after the time when the Dows made the promise and the time when Harvey acted on it – cannot be invoked retrospectively to impose obligations that were not part of a promise.

Further, as the Law Court noted, the Dows' promise to Harvey impliedly but necessarily included a promise to convey the land on which the house now sits. However, there is no evidence that the Dows promised her any particular land except, by implication, the land contained within the footprint of the structure. As is noted in the original judgment, the statements made by the Dows, which embodied the "promise" that would lead to future performance, did not include any meaningful suggestion about what land Harvey would be entitled to acquire when the date of performance arrived. If the court entered an order describing the property that the defendants are to convey to Harvey, the court either would be forced to speculate about the intentions of the parties or would end up actually creating the terms of the promise. That property might – or might not – include the curtilage. It might – or might not – include the substantial acreage that Harvey argues was encompassed in her detrimental reliance. It might – or might not – also include an easement that Harvey now claims she is entitled to acquire. The record does not reveal the answers to these questions.

These points, of course, generate the question of what land Harvey will be entitled to acquire, once the time for performance arrives. This is a question that is left for

4

information, that decision to proceed with the construction project may well have been understandable under the circumstances that then existed, because at the time Harvey and her parents had a good relationship and Harvey may have expected to receive clarification of those essential terms later. Nonetheless, Harvey could not have reasonably relied on any expectation that she would acquire any specific land owned by her parents (again, other than the land on which the house was built) because the defendants' promises did not address the location of the land they were willing to give here. Rather, Harvey made assumptions about her rights. The Dows did not promise her a specific tract of land, and Harvey was not entitled to develop and act on a reasonable expectation interest for land within a certain set of boundaries that go beyond the physical structure of the house. Harvey argues here that she is entitled to a particular sizeable portion of the 50-acre parcel that the defendants own, as well as a portion of the adjacent 75-acre parcel if the curtilage to her house extends onto that land and even an easement that would benefit the land she claims. For the reasons noted in the original decision, any such relief would be the product of speculation or a judicial creation of a contract that the parties' themselves had not formed, either directly or through detrimental reliance.

Harvey built her house with the knowledge, acquiescence and support of the Dows, after they promised her that she would acquire ownership of some property of unspecified size and location (aside from the land under the house) at some unspecified time in the future. These circumstances do not result in a legally enforceable right for Harvey to secure present ownership of specific land at this specific time. Framed in terms of the rubric associated with the legal principle of promissory estoppel, the issue may be seen as one where the Dows' promises did not extend to the quantity and location of land or to the time when Harvey would be entitled to acquire an ownership interest to that land. The issue may also be seen as one whether the assumptions that Harvey made about those expectations of location and time were not reasonable ones, because the evidence does not show that she was justified in making those particular assumptions or acting on them.

---

another day, because the issue presented here is whether the defendants are subject to a *present* legal obligation to convey land to Harvey or, alternatively, a *present* legal obligation to compensate her for the amount of the expenses she incurred in building the house.

Accordingly, any contractual liability created through the Dows' conduct, even when that liability arises from a contract that is rendered enforceable through Harvey's detrimental reliance, does not provide her with a basis for relief here.

The entry shall be:

Pursuant to the Law Court's mandate, further findings of fact and conclusions of law filed by the court on remand. On counts 1, 2 and 3 of the complaint, judgment shall remain entered for the defendants. On count 1 of the counterclaim, judgment shall remain entered for counterclaim plaintiffs Jeffrey B. Dow, Sr. and Kathryn L. Dow. The specific relief granted to the counterclaim plaintiffs is set out in the judgment dated December 13, 2007.

Dated: July 28, 2009

_____
Justice, Maine Superior Court

**A TRUE COPY**

ATTEST: _____
CLERK

6

TERESA L HARVEY  - PLAINTIFF
545 MUDGETT ROAD
CORINTH ME 04427
Attorney for: TERESA L HARVEY
PAUL A WEEKS  - RETAINED 03/01/2006
LAW OFFICE OF PAUL WEEKS
82 COLUMBIA STREET
BANGOR ME 04401


CRAIG A DYER  - PLAINTIFF
545 MUDGETT RAOD
CORINTH ME 04427
Attorney for: CRAIG A DYER
PAUL A WEEKS  - RETAINED 03/01/2006
LAW OFFICE OF PAUL WEEKS
82 COLUMBIA STREET
BANGOR ME 04401


vs
JEFFREY B DOW SR - DEFENDANT
MUDGETT ROAD,
CORINTH ME 04427
Attorney for: JEFFREY B DOW SR
EDMOND BEAROR  - RETAINED 04/06/2006
RUDMAN & WINCHELL
84 HARLOW ST
PO BOX 1401
BANGOR ME 04402-1401


KATHRYN L DOW  - DEFENDANT
MUDGETT ROAD,
CORINTH ME 04427
Attorney for: KATHRYN L DOW
EDMOND BEAROR  - RETAINED 04/06/2006
RUDMAN & WINCHELL
84 HARLOW ST
PO BOX 1401
BANGOR ME 04402-1401


JEFFREY B DOW JR - DEFENDANT
MUDGETT ROAD,
CORINTH ME 04427
Attorney for: JEFFREY B DOW JR
EDMOND BEAROR  - RETAINED 04/06/2006
RUDMAN & WINCHELL
84 HARLOW ST
PO BOX 1401
BANGOR ME 04402-1401

SUPERIOR COURT
PENOBSCOT, ss.
Docket No   BANSC-CV-2006-00046


**DOCKET RECORD**


Filing Document: COMPLAINT                    Minor Case Type: CONTRACT
Filing Date: 03/01/2006


## Docket Events:

03/01/2006 FILING DOCUMENT - COMPLAINT FILED ON 03/01/2006