STATE OF MAINE                                    SUPERIOR COURT
PENOBSCOT, SS.                                    Docket No. CV-12-35

JAMES A. BROWN,                )
                Plaintiff,     )
                               )
                               )
        v.                     )         **JUDGMENT**
                               )
                               )
DAN K. GROVER, JR.,            )
                Defendant.     )


This matter came before the Court for hearing on May 9 and 10, 2013. Plaintiff appeared with his attorney, Kirk Bloomer, Esq. Defendant appeared with his attorney, David Szewczyk, Esq.

Plaintiff filed a four count complaint alleging: 1) Breach of Contract, 2) Breach of Fiduciary Duty, 3) Negligent Misrepresentation, and 4) Fraud. Plaintiff dismissed Counts 3 and 4, and the Court directed a verdict for Defendant on Plaintiff's Count 2.

Defendant filed a two count counterclaim alleging: 1) Breach of Contract, and 2) Breach of Fiduciary Duty.

Plaintiff's Count 1 – breach of contract

The breach of contract alleged in Plaintiff's count 1 alleges that the parties entered into a settlement agreement on December 20, 2011 to terminate the Plaintiff's participation in the business known as "Orrington Fuel, LLC.", and that Defendant breached that agreement.

There is no question that Plaintiff and Defendant directly engaged in settlement negotiations to terminate their business relationship relating to Orrington Fuel, LLC. There is also no question that Don Brown, Esq., on behalf of the Plaintiff, and Richard Silver, Esq., on behalf of the Defendant, engaged in settlement negotiations to terminate their clients' business relationship. Mr. Don Brown testified that Mr. Silver told him that he (Silver) had authority from Mr. Grover to settle the dispute between the parties by Defendant paying Plaintiff $7,500.00 plus the Defendant assuming the company's debt, and that Mr. James Brown agreed to those terms. Mr. Silver testified that he engaged in settlement discussions on behalf of Mr. Grover, and that Mr. Brown and he (Silver) were perhaps 90% of the way to a full and final resolution when the deal fell apart, and that he (Silver) did not have authority to bind Mr. Grover to the number at which the parties were negotiating when the deal fell apart. Attorney Silver recalled, that when speaking with Attorney Brown, he (Silver) was confident that they would reach agreement and that he would recommend a settlement to his client. And, the

1

attorneys may well have been able to reach agreement, but any such agreement obviously required the consent of each client.

In this case, however, it is not necessary for the Court to decide exactly what was said between Attorneys Brown and Silver. Given Joint Exhibit #4, Attorney Brown's December 21, 2011 letter to Attorney Silver, it is clear to the Court that whatever discussions were had between the parties and/or their attorneys before that letter, those discussions did not reach a full and final agreement. The letter lists 4 "remaining issues", one of which relates directly to Orrington Fuel, LLC. Thus, the Court finds there was no final agreement between the parties, and enters Judgment for the Defendant on Count I of the Plaintiff's Complaint.


## Counterclaim Count I – Breach of Contract

The breach of contract alleged in Count I of the Counterclaim alleges a breach of the "Limited Liability Company – Partnership/Member Agreement", Joint Exhibit #1. There is an implied duty of good faith and fair dealing in the agreement between the parties. See *31 M.R.S. § 1044(4)* and *31 M.R.S. § 1522(2)*. Buying oil from Dead River and delivering the oil to Orrington Fuel's customers was the essence of Orrington Fuel's business.

The Court finds that Plaintiff/Counterclaim Defendant breached the September 1, 2010 agreement by: 1) instructing Dead River on December 17, 2011 to revoke (indefinitely lock down) the lifting privileges of Orrington Fuel[1], and 2) holding in his possession customer payments of $4,293.65 ($3,630.31 + 663.34) for 7 days after having just withdrawn $5,000 from the Katahdin account which caused Dead River not to be able to draw from Orrington Fuel's Katahdin account to pay the Dead River bill (and, as mentioned above, the essence of Orrington Fuel was acquiring oil from Dead River and delivering the same to Orrington Fuel customers).

Plaintiff's financial contributions to the business total $8,500.00, $3,500.00 (1/2 truck) + $5,000.00 loan. The Court does not find that the Plaintiff's $1,500 check in November of 2011 or the $1,000 check in June, 2011 were reimbursable capital contributions (explained below).

Defendant's financial contributions to the business total $10,199.80, including $3,500.00 (1/2 of truck) + $170.00 Peerless Insurance payment + $196.54 Verizon payment + 5,333.26 (payments to Katahdin 3/7/12 to 4/26/13) + $1,000.00 unpaid loan balance (explained below).

Orrington Fuel, LLC was essentially a cash-only business, except the Plaintiff and Defendant could extend credit to others. However, if someone to whom credit had

---

[1] The 12/30/11 letter from Attorney Don Brown directly contradicts the testimony of James Brown that he (James Brown) only instructed Dead River to suspend the lifting privileges of Orrington Fuel, LLC for the weekend, and the Court accepts that the letter recites the correct version of the instructions. *See Joint Exhibit #5.*

2

been extended failed to pay his/her bill, whichever party extended the credit was required to cover the debt. The Court is satisfied that on November 16, 2011 A&M owed Orrington Fuel for oil deliveries. The Court finds that on November 16, 2011 Mr. Brown, in accordance with the agreement, contributed $1,500 to Orrington Fuel to cover A&M's bill since Mr. Brown had extended credit to A&M. Thus, the Court finds that the November 16, 2011 check in the amount of $1,500.00 from Brown's Concrete was not a capital contribution. The Court does not award return of this money to Mr. Brown given A&M's debt to Orrington Fuel throughout the time frame in question.[2]

The Court is not persuaded that Mr. Brown's $1,000.00 check on June 15, 2011 was a capital contribution. As of June 15, 2011, the balance in the Katahdin Trust account was $4,181.73 and thus it does not appear that the company needed any additional capital contribution at that point in time.

Defendant and Ms. Clukey testified that the $5,000 check from Mr. Brown on November 28, 2011 was to cover for A&M's debt to Orrington Fuel. Mr. Brown testified that he contributed $5,000 to the company on November 28, 2011 because the company needed money to keep going. Defendant/Counterclaim Plaintiff has the burden of proof on this issue, and the Court is not persuaded that this $5,000.00 was to cover an A&M debt. First, there is no evidence that, as of November 28, 2011, A&M owed Orrington Fuel $5,000.00, particularly after Mr. Brown's November 16, 2011 $1,500 payment on A&M's behalf. See *Joint Exhibit #4* (amount due on 11/18/11 was $3,630.31 - $1,500.00 = $2,130.31). On the other hand, Orrington Fuel's Katahdin Bank account had a negative balance (-2,919.50) on November 25, 2011, just a few days before the $5,000.00 check was written. Additionally, Plaintiff/Counterclaim Defendant's $5,000.00 check was deposited on November 28, 2011 (see back of cancelled check ) and a deposit into the Katahdin account on November 28, 2011 gave the account a positive balance. For these reasons, the Court finds that such $5,000.00 was a loan to the company and the later $5,000.00 withdrawal, while not under appropriate circumstances, represents a return of that loan to the Plaintiff/Counterclaim Defendant.

The Court is satisfied that Defendant made a $5,000.00 loan to Orrington Fuel by paying Dead River for a fuel lift on 12/28/11. Plaintiff argued that there was no evidence that those funds benefitted Orrington Fuel, LLC as opposed to the Defendant himself. Defendant argued he made this capital contribution in an effort to keep the company operating. What persuaded the Court that the $5,000 fuel purchase on 12/28/11 was for the benefit of Orrington Fuel, not the Defendant individually, was that several deposits were made to the Orrington Fuel Katahdin account after

---

[2] The Court finds that as of November 18, 2011 A&M owed Orrington Fuel $3,630.31. *See Joint Exhibit #4, page 4.* According to the Plaintiff, A&M was a big customer for Orrington Fuel, LLC. A&M did not make any payments to Orrington Fuel between 10/28/2011 and 11/18/11, but received 4 fuel deliveries within this time frame. On 12/16/11 A&M made a check to Orrington Fuel in the amount of $3,630.31, paying for the deliveries through 11/18/11. Orrington Fuel continued to make deliveries to A&M from 11/18/11 to 12/12/11, as well as a delivery to A&M on 12/16/11. As of 12/12/11, A&M owed $5,773.42, $1,089.72 of which was "current", and for this reason the Court does not credit Plaintiff with the $1,500.00 payment he made on behalf of A&M.

3

12/28/11, and is satisfied that the business account of Orrington Fuel, LLC received deposits after the loan from the Defendant was made and that the deposits are consistent with customers' purchase of fuel. Those credits were then used to help pay Orrington Fuel, LLC's loan and debts. Therefore, the Court finds that Defendant did loan $5,000.00 to the company and received $4,000.00 back on the loan, leaving a $1,000.00 unpaid loan to the company.

The parties sold the company's oil truck by agreement on January 17, 2012, and the proceeds went toward paying Orrington Fuel's debts. There are no other assets, except perhaps some accounts receivable – which are now over 2 years old. The Dead River debt has been paid. The Katahdin Trust loan now has a balance of approximately $3,000.00 ($3,693.52 as of 2/20/13)(Defendant has made numerous payments on the loan).

The Court is satisfied that the following amounts withdrawn from Orrington Fuel's Katahdin's account by the Plaintiff were applied to Orrington Fuel debts:

| | |
|---|---|
| 12/29/11 | $6,858.47 (Dead River, minus check fee) |
| 12/30/11 | $1,209.00 (Dead River, minus check fee) |
| 1/5/12 | $53.35 |
| 1/6/12 | $86.88 |
| 1/9/12 | $112.30 |
| 1/27/12 | $40.08 |

Plaintiff/Counterclaim Defendant also withdrew $2,000.00 on 12/30/11 from the company's operating account and kept the same as his own. This $2,000.00 was an inappropriate withdrawal by the Plaintiff/Counterclaim Defendant and he must reimburse the Defendant/Counterclaim Plaintiff for one-half.

As an element of damage for Plaintiff's breach, Defendant/Counterclaim Plaintiff has asked the Court to award him ½ of the value of the business. First, both parties acquiesced in the manner in which the operations of the company were terminated, even though not in accord with their written agreement. By agreeing to sell the oil truck (the very essence of the business operations), the Court is not satisfied that Defendant/Counterclaim Plaintiff is entitled to damages for loss of the business.

Additionally and alternatively, the Court is not satisfied that Defendant established by a preponderance of the evidence a value for the business. By mid-December, 2011 the business was in a downward spiral. By that time, the parties had agreed and then disagreed to sell the one and only oil delivery truck. The Defendant/Counterclaim Plaintiff wanted to terminate the business, then he did not want to terminate the business. The Plaintiff/Counterclaim Defendant wanted to sell the truck and conclude the business, then he wanted $10,000 plus release from liability for the $14,000+ Katahdin loan to conclude the business. The Court finds that at some point in December, 2011, Plaintiff/Counterclaim Defendant wanted to give his interest in Orrington Fuel, LLC to his then-wife as part of a divorce settlement, then he did not. By mid-December, 2011 the business had no clerical help.

4

The Court does not find Defendant's estimate of value ($20,000) reliable. The business apparently did not have sufficient funds to cover itself from one oil lift from Dead River to the next – that is, the business depended on the customers paying for the oil delivery immediately so that sufficient funds would be in Orrington Fuel's account for Dead River to debit the account 7 days after the lift of oil. There is no evidence of profits, other than that the business was able to make the monthly loan payment to Katahdin Trust (loan balance $14,823.23 as of 12/29/10), but the loan payments were often late (for instance, the 8/30/12 payment was not made until 10/31/11) and late charges were often assessed. Overdraft charges were often posted to the company's Katahdin's account. Each party, at different points in November/December of 2011, was ready to sell the oil truck and walk away (end the business without any exchange of funds). While the business had potential and may have had some value over the value of the truck, the Court is not satisfied that the Defendant/Counterclaim Plaintiff established a reliable value of the business in excess of the value of the oil truck.

The Court finds that the Plaintiff/Counterclaim Defendant James Brown owes the Defendant/Counterclaim Plaintiff Dan Grover the sum of $4,349.90, and it is ORDERED that Plaintiff/Counterclaim Defendant James Brown immediately pay said sum to Defendant/Counterclaim Plaintiff Dan Grover. Said $4,349.90 represents the following: ½ of Mr. Brown's $2,000 withdrawal ($1,000); ½ of the payments that have been made by Mr. Grover to Katahdin Trust ($5,333.26/2 = $2,666.63); ½ of the Verizon and Peerless Ins bills ($366.54/2 = 183.27); and ½ of the unpaid portion of Mr. Grover's $5,000.00 loan to the company (½ of $1,000.00 = $500.00).

It is further ORDERED that each party shall pay ½ of the remaining debt to Katahdin Trust Company, plus ½ of all taxes owed by Orrington Fuel, LLC, plus ½ of the fee to reactivate Quick Books (if necessary), plus ½ of the accountant fee for tax preparation.[3] To the extent the parties can collect any amounts owed to Orrington Fuel, they shall share the proceeds equally.

Counterclaim Count II – Breach of Fiduciary Duty

To prove a claim of breach of fiduciary duty, the Plaintiff must establish by a preponderance of the evidence the following:
1. that the plaintiff placed trust and confidence in the defendant;
2. that there was a great disparity in the position and influence of the parties, and that the disparity was in favor of the defendant;
3. that the defendant engaged in transactions favorable to the defendant and adverse to the plaintiff in the course of the relationship; and
4. that the plaintiff has damages or losses causes by the breach.

*Maine Jury Instruction Manual*, §7-35, citing *Stewart v. Machias Savings Bank*, 2000 ME 207.

---

[3] The Court is satisfied that the company's records were initially kept at the Plaintiff's place of business, but were later moved – by agreement of the parties – to the Defendant's place of business.

The Court is satisfied that both parties placed trust and confidence in each other, and in fact seemed to be in the process of building a small business together through the early fall of 2011. The Court is satisfied that the counterclaim defendant engaged in transactions favorable to himself and adverse to the counterclaim plaintiff in the course of the relationship. However, the Court is not satisfied that there was a great disparity in the position and influence of the parties. Among other reasons, at or near the time of the breaches, Defendant was personally involved with the company's bookkeeper who was also the Plaintiff's wife at the time. It appears to the Court that the parties had equal position and influence. Therefore, the Court finds for the Plaintiff/Counterclaim Defendant on Count II of the Counterclaim.

The Clerk shall enter this Judgment upon the docket by reference.

The entry shall be:
Count I of Complaint– Judgment for Defendant
Count II of Complaint – Judgment for Defendant (directed verdict)
Count III of Complaint – dismissed by Plaintiff
Count IV of Complaint – dismissed by Plaintiff

Count I of Counterclaim – Judgment for Defendant/Counterclaim Plaintiff Dan Grover in the amount of $4,349.90. Execution to issue.
Count II of Counterclaim – Judgment for Plaintiff/Counterclaim Defendant James Brown.

Dated: May 22, 2013

Ann M. Murray, Justice
Cross-designated

6