**Ernest SZELENYI**

v.

**MORSE, PAYSON & NOYES INSURANCE.**

Supreme Judicial Court of Maine.

Argued June 6, 1991.
Decided July 30, 1991.

Harrison L. Richardson (orally), William K. McKinley, Richardson & Troubh, Portland, for plaintiff.

Thomas F. Monaghan (orally), Monaghan, Leahy, Hochadel & Libby, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

The Superior Court (Cumberland County, *Lipez, J.*) awarded $309,889.10 in damages to plaintiff Dr. Ernest Szelenyi against defendant Morse, Payson & Noyes Insurance (MPN) based on a jury verdict that MPN had breached an implied agency agreement to advise Szelenyi as to the adequacy of his professional liability insurance coverage or to provide Szelenyi with information to make an informed decision as to the adequacy of his coverage. MPN brings an appeal from the judgment. We conclude that there is not sufficient evidence in the record to support a finding that the parties had an implied agreement that MPN would advise Szelenyi or give him information as to the sufficiency of his insurance coverage, and we vacate the judgment of the Superior Court.

Szelenyi, a physician, became associated in 1969 with the Pineland Center, a state facility for the mentally handicapped in Pownal. In January 1971, Szelenyi procured through Dow & Pinkham Insurance, a Portland insurance agency, a professional liability insurance policy issued by the St. Paul Fire & Marine Insurance Company (St. Paul), with limits of $100,000 per claim and $300,000 per occurrence. MPN, another insurance agency based in Portland, purchased the Dow & Pinkham agency on October 1, 1971, and renewed Szelenyi's policy annually until 1983. The limits on Szelenyi's policy remained at $100,000 per claim and $300,000 per occurrence during that time. Szelenyi terminated his relationship with MPN in March of 1983, when he notified the agency that he was resigning from Pineland.

In 1984, Szelenyi was named as a defendant in a medical malpractice lawsuit for damages arising out of the death of Therese Miller, a nurse's aide at the Pineland Center who suffered a fatal heart attack while Szelenyi was a physician on duty at Pineland in January 1983. Judgment in the malpractice action was entered against Szelenyi in 1987 for damages in the amount of $260,000. *See Miller v. Szelenyi*, 546 A.2d 1013, 1015–17 (Me.1988). Only $100,000 of the judgment was covered by Szelenyi's professional liability insurance. Szelenyi filed a complaint against MPN and St. Paul[1] alleging that MPN had breached its duty as Szelenyi's agent to advise him of the consequences of underinsurance and to procure adequate insurance for him, and that MPN had breached its contract to procure adequate insurance protection for him.

---

1. St. Paul was dismissed from the case prior to trial.

After the court granted summary judgment to MPN on the breach of contract claim, the case went to trial on the issue of whether MPN had breached an implied agency agreement to advise Szelenyi on the adequacy of his professional liability insurance coverage or to provide him with information that would permit him to make an informed decision on the adequacy of his coverage.[2] The jury returned a special verdict finding that MPN had breached such an implied agency agreement, and that the breach of the agreement was a proximate cause of damages to Szelenyi in the amount of $309,-889.10. The court entered judgment in that amount for Szelenyi, and denied MPN's motion for judgment notwithstanding the verdict. MPN then brought this appeal.

We review the record in a light most favorable to Szelenyi to determine if there is credible evidence to support a finding of an implied agency agreement under which MPN assumed the duty to advise or give Szelenyi information as to the adequacy of his insurance coverage. *Jourdain v. Dineen,* 527 A.2d 1304, 1306 (Me.1987).

An insurance agent generally assumes only those duties found in an ordinary agency relationship, that is, to use reasonable care, diligence and judgment in obtaining the insurance coverage requested by the insured party. *Sandbulte v. Farm Bur. Mut. Ins. Co.,* 343 N.W.2d 457, 464 (Iowa 1984); *see Hardt v. Brink,* 192 F.Supp. 879, 880 (W.D.Wash.1961). An insurance agent does not have a duty to advise an insured about adequacy of coverage merely because an agency relationship exists between the parties.[3] Before such a duty can arise, a special agency relationship must exist between the parties. *See,*

*e.g., Nelson v. Davidson,* 155 Wis.2d 674, 456 N.W.2d 343, 347 (1990); *Bruner v. League Gen. Ins. Co.,* 164 Mich.App. 28, 416 N.W.2d 318, 320 (1987); *Nowell v. Dawn Leavitt Agency, Inc.,* 127 Ariz. 48, 617 P.2d 1164, 1168 (App.1980); *but see Dimeo v. Burns, Brooks & McNeil, Inc.,* 6 Conn.App. 241, 504 A.2d 557, 559 (1986).

"The existence and extent of the duties of the agent to the principal are determined by the terms of the agreement between the parties, interpreted in light of the circumstances under which it is made...." *Restatement (Second) of Agency* § 376 (1958). The agent's duties are based on the manifestations of consent of the parties and ordinarily must be inferred from the parties' conduct. *Id.,* comment a. We agree with MPN that there is not enough in the evidence of the course of dealings between MPN and Szelenyi to infer an agreement that MPN had a duty to advise Szelenyi or give him information as to the adequacy of his professional liability coverage.

Although the parties had a course of dealings that spanned over twelve years, there is no evidence that Szelenyi ever manifested a desire for MPN to give him advice or information about adequate coverage limits, nor is there evidence that MPN gave Szelenyi advice or information about what it considered to be adequate coverage limits. When Szelenyi first procured professional liability insurance through Dow & Pinkham, MPN's predecessor, the evidence shows only that he asked that the agency contact him at home after 5:00 p.m. and that the handwriting on the initial insurance application was not Szelenyi's. There is no evidence in the record as to who did complete the application, who

2. Szelenyi originally sought to have the case tried on the theory that MPN negligently breached its duty as his agent to advise him as to the adequacy of his coverage. The court ruled that the case was not to be tried under a negligence theory, and instructed the jury on contract principles as those principles are incorporated by the law of agency, i.e., whether the parties impliedly agreed that MPN had a duty to advise or give information to Szelenyi as to appropriate coverage. The agency relationship existing between MPN and Szelenyi in this case is not sufficient to create a legally enforceable duty to advise under either a tort or contract theory.

3. We previously have held that an insurance agent does not have a duty to advise an insured as to adequacy of coverage where no agency relationship exists between the insurance agency and the insured. *Ghiz v. Richard S. Bradford, Inc.,* 573 A.2d 379, 380–81 (Me.1990).

selected the policy limits, or whether the agency gave Szelenyi advice or information on appropriate coverage limits.

The standard procedure followed by MPN for renewing Szelenyi's policy was to send him an application with certain information written in by an MPN employee to simplify the renewal process, including Szelenyi's name, address, policy number, and current coverage limits. Szelenyi argues that the jury reasonably could infer that by checking off the previous year's policy limits, MPN was undertaking a duty to advise Szelenyi as to appropriate insurance coverage. In light of evidence that MPN offered Szelenyi the opportunity to increase his coverage at least twice over the course of their relationship, however, such an inference cannot be rationally made. In a 1981 letter included with Szelenyi's renewal application, an MPN employee wrote Szelenyi that "if you are interested in increasing your limits of liability I will be happy to provide you with a quote." That offer demonstrates that MPN was leaving decisions about appropriate coverage to Szelenyi rather than undertaking any responsibility to give advice or information to Szelenyi about the adequacy of his coverage. Moreover, there is no evidence that Szelenyi responded to MPN's notices that higher coverage was available, or, if he did respond, whether MPN gave him advice or information about higher limits that he rejected.[4]

In the evidence of the dealings between MPN and Szelenyi, there is no suggestion that they had anything more than an ordinary agency relationship that generally exists between an insurance agent and an insured party. We decline to sustain a judgment that imposes a legal duty on an insurance agent to advise or give information to an insured party concerning the adequacy of insurance coverage in the absence of evidence of a special relationship or agreement between the parties.

The entry is:

Judgment vacated. Remanded to the Superior Court for entry of judgment for the defendant.

All concurring.

---

**4.** In denying MPN's motion for judgment notwithstanding the verdict, the trial justice noted that the jury could have found that Szelenyi would be inclined to look to MPN for advice or information concerning his liability insurance in light of evidence that he was in his 60's and 70's during the years in question, he had difficulty with the English language, and he lacked sophistication in insurance matters. Although we agree that such a finding may be reasonable, it is not sufficient to support the judgment, which depends on the manifestation of consent between the parties.