2000 ME 207

Laurel STEWART

v.

**MACHIAS SAVINGS BANK**

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 26, 2000.
Decided Nov. 30, 2000.

Sandra Hylander Collier, Catherine L. Haynes, Ellsworth, for plaintiff.

Bernard J. Kubetz, Thad B. Zmistowski, Eaton Peabody Bradford & Veague, P.A., Bangor, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Laurel Stewart appeals from a judgment entered in the Superior Court (Hancock County, *Hjelm, J.*) awarding her only $5,000 following a jury verdict and from a summary judgment in favor of Machias Savings Bank on Stewart's claim for punitive damages. Stewart contends that the court delivered defective jury instructions on damages, made improper rulings on the admissibility of one witness's testimony, and erroneously rendered a summary judgment in the bank's favor on Stewart's claim for punitive damages. The bank cross-appeals, arguing that the court erred in denying the bank's Rule 50(a) motion for judgment as a matter of law. Because we agree with the bank's cross-appeal, we do not address Stewart's contentions and vacate the judgment.

[¶ 2] The facts are largely undisputed. In 1992, Stewart sought to purchase her

first house with the assistance of a real estate broker and an attorney. She has an associate's degree in paralegal studies, but has not obtained employment in that field. She learned generally about house inspections in the course of her schooling. Before she got her degree, Stewart worked for her family's real estate business for ten years, but exercised no responsibility over maintenance and repairs.

[¶ 3] When Stewart first visited the home of Kevin and Beth Murphy, she noticed that the floor was not level. The real estate agent reported that the floor slanted because of a crown in the concrete slab on which a portion of the house stood. Stewart visited the premises once, asked no other questions, and did not seek any inspections. She agreed to purchase the house with a loan from the bank and understood that the bank's loan would be guaranteed by the Farmer's Home Administration (FmHA) if the dwelling met FmHA standards. The FmHA requires the bank to provide a written guarantee that the dwelling is structurally sound; that the heating, plumbing, and electrical systems work; and that the dwelling meets FmHA's thermal standards.

[¶ 4] When Stewart agreed to purchase the house, she negotiated for certain improvements, but knowingly waived the right to make the sale contingent on a satisfactory inspection. According to Stewart, she did not seek an independent inspection because she knew the bank was getting one and she did not want to pay twice. Stewart did not ask her attorney to help her get a house inspection.

[¶ 5] Thomas Clark, an employee of the bank, asked Victor Mercer, a construction consultant, to determine whether the Murphys' house complied with the FmHA standards. Mercer sent Clark a letter explaining that he could not perform the inspection for the $200 fee the bank was offering. Clark consulted with Stewart, who agreed to allow Kevin Murphy, co-owner of the house and, himself, a contractor, to conduct the inspection as "a way around" the inspection problem. Mercer had suggested this possibility in his letter to Clark. Stewart asked if an inspection by the seller was normal, and Clark told her it was not. Stewart, nonetheless, agreed to the arrangement. Kevin Murphy's inspection report disclosed no defects in the house. Stewart did not see the letter from Mercer before she purchased the house. After the purchase, Stewart discovered multiple structural defects. The Murphys sold the property to Stewart for $54,000. At the time, the building's tax assessment was $32,200; it is now $12,200.

[¶ 6] Stewart filed suit against the bank, alleging breach of a fiduciary duty, negligence, punitive damages, and unfair trade practices. The Superior Court granted a summary judgment in favor of the bank on Stewart's negligence and punitive damages claims. The court later granted a motion in limine to exclude evidence offered in support of Stewart's unfair trade practices claim because Stewart had failed to provide proper notice of the claim. As a result, the court only tried the breach of a fiduciary duty claim.

[¶ 7] At the close of the plaintiff's case, the bank moved for a judgment as a matter of law pursuant to Rule 50(a). The court reserved ruling. The bank renewed its motion at the close of all the evidence, but the court again reserved ruling. After the jury returned a verdict of $5,000 for Stewart, the court denied the bank's Rule 50(a) motion.

[¶ 8] The bank contends that the court erred when it denied the bank's motion for a judgment as a matter of law because the plaintiff failed to establish the existence of a fiduciary duty and proximate cause. Stewart contends that the court did not err because the jury reasonably could have found a fiduciary duty based on Stewart's placement of trust in the bank, which held a position of power and influence over her. Stewart also contends that the facts demonstrate how the bank's actions, through its agent, caused Stewart's damages.

[¶ 9] In reviewing a court's denial of a motion for a judgment as a matter of law, "we view the evidence together with all justifiable inferences in the light most favorable to the party opposing the motion. The motion should not be granted if any reasonable view of the evidence could sustain a verdict for the opposing party." *Thibodeau v. Slaney*, 2000 ME 116, ¶ 11, 755 A.2d 1051, 1054 (citations omitted); *see* M.R. Civ. P. 50(a). We must "determine if any reasonable view of the evidence and those inferences that are justifiably drawn from that evidence supports the jury's verdict." *Id.* (internal quotation marks and citations omitted).

[¶ 10] In deciding the bank's Rule 50(a) motion, the court concluded that "the evidence—although disputed—was sufficient to generate a factual issue of whether a fiduciary relationship existed between the parties and of whether the defendant failed to satisfy its resulting obligations to the plaintiff." We have described the salient elements of a fiduciary relationship as: "(1) the actual placing of trust or confidence in fact by one party in another, and (2) a great disparity of position and influence between the parties at issue." *Bryan R. v. Watchtower Bible & Tract Soc'y of New York, Inc.*, 1999 ME 144, ¶ 19, 738 A.2d 839, 846 (quoting *Morris v. Resolution Trust Corp.*, 622 A.2d 708, 712 (Me. 1993)).

■ [¶ 11] Standing alone, a creditor-debtor relationship does not establish the existence of a confidential relationship.[1] *See First NH Banks Granite State v. Scarborough*, 615 A.2d 248, 250 (Me.1992). To demonstrate the necessary disparity of position and influence in such a bank-borrower relationship, a party must demonstrate "diminished emotional or physical capacity or ... the letting down of all guards and bars." *Diversified Foods, Inc. v. First National Bank of Boston*, 605 A.2d 609, 615 (Me.1992); *Reid v. Key Bank of Southern Maine, Inc.*, 821 F.2d 9, 18 (1st Cir.1987). "We cannot overthrow the findings of the trial court simply because the parties were mature individuals in full possession of their faculties. Confidential relations can, and do, exist between such people." *Ruebsamen v. Maddocks*, 340 A.2d 31, 36 (Me.1975); *Morris*, 622 A.2d at 712. On the other hand, "[a]n allegation of one party's inexperience or trust will not by itself warrant an adjudication of a confidential relation without a statement of the facts indicating the actual placing of confidence and trust, and the abuse of the relation." *Ruebsamen*, 340 A.2d at 35.

■ [¶ 12] We conclude that the evidence presented was inadequate to demonstrate to a reasonable jury that Stewart was of a diminished emotional or physical capacity at the time she arranged for the purchase of the house, or that she let down all guards and bars. Stewart, with knowledge that Kevin Murphy was the owner of the house, allowed the bank to arrange for him to conduct the FmHA inspection. There is no indication that Stewart was in such a vulnerable position that she allowed the bank to exercise great control over her transactions. *See Diversified Foods, Inc.*, 605 A.2d at 615 (noting that cases finding a fiduciary duty toward bankrupt debtors "were limited to factual situations in which the banks took almost complete control over the business"). Although a jury reasonably could have concluded that Stewart placed trust and confidence in the bank, no

---

1. A fiduciary relationship is the same as a confidential relationship, which gives rise to the same duties. *See Ruebsamen v. Maddocks*, 340 A.2d 31, 36 (Me.1975). "In a legal sense, confidential relations are deemed to arise whenever two persons have come into such a relation that confidence is necessarily reposed by one and the influence which naturally grows out of that confidence is possessed by the other and this confidence is abused or the influence is exerted to obtain an advantage at the expense of the confiding party." *Id.* at 34–35; *see Leighton v. Fleet Bank of Maine*, 634 A.2d 453, 457 (Me.1993).

reasonable view of the evidence supports a conclusion that there was a great disparity of position and influence between Stewart and the bank.[2] The bank owed no fiduciary duty to Stewart.

The entry is:

Judgment vacated. Remanded to the Superior Court for further action consistent with this opinion.

2. We find that the present case is distinct from *Morris v. Resolution Trust Corp.*, 622 A.2d 708 (Me.1993), on which Stewart relies. There, a loan officer advised the plaintiff to continue to employ a certain contractor because, unbeknownst to the plaintiff, the loan officer wanted the contractor to satisfy his delinquent loans with the bank for which the loan officer was responsible. *Id.* at 710–13. We held that, because of the loan officer's "extensive prior experience" with the contractor, and his awareness of the contractor's financial state, a jury reasonably could have found that the loan officer was in a superior position. *Id.* at 712. Here, Clark had no such history with Kevin Murphy, and was not aware of additional information about Kevin Murphy's abilities. The evidence fails to demonstrate the necessary "disparity of position and influence between the parties to the action." *Id.* (quoting *Ruebsamen*, 340 A.2d at 35).