STATE OF MAINE

YORK, ss.

PAUL and BONNIE AMES

Plaintiffs

v.

COLE-HARRISON AGENCY and
PEERLESS INSURANCE COMPANY

Defendants

SUPERIOR COURT
CIVIL ACTION
DOCKET NO: CV-05-171
GAB       /·· ·  ·{ ·;·, ·  ··7

ORDER ON DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT

This matter comes before the Court on both defendants' motions for summary

judgment pursuant to M.R. Civ. P. 56(c).

## BACKGROUND

Plaintiffs Paul and Bonnie Ames ("Plaintiffs") are residents of Wells in York

County, Maine. Defendant Cole-Harrison Agency ("CHA") is a Maine corporation

which sells insurance products. Defendant Peerless Insurance Company ("Peerless") is

a corporation licensed to do business in Maine.

In June 1999, Plaintiffs purchased a home on Drakes Island in Wells. They

consulted with CHA through its agent, Robert Foley ("Foley"), about obtaining

homeowners' insurance. They contend that they specifically requested the "best

coverage available, including replacement cost."[1] Foley negotiated with only Mrs.

Ames, and he informed her that they might have difficulty obtaining full coverage

because it was a second home, it was close to the coast, and they initially intended to

rent it for some portion of the year. She understood that there may be some limitations

---

[1]     Plaintiffs' complaint, ¶ 6.

but reiterated her request for the best possible coverage. After soliciting quotes and offers of insurance, Foley informed Plaintiffs that they were eligible for either a dwelling fire policy or a regular homeowners' policy with replacement cost coverage, and he recommended the latter because it provided better protection.[2] Plaintiffs selected the homeowners' policy through Peerless, and their coverage began on June 4, 1999. Plaintiffs renewed it yearly but did not add coverage.

In October 2002, Plaintiffs began major renovations to the home, incurring approximately $126,000 in construction costs and significantly increasing the value of the property. Construction continued until June 14, 2003, when Plaintiffs' home was completely destroyed by fire. They had not obtained additional insurance to cover the renovations. When Mrs. Ames received her annual renewal reminder in spring 2003, it had occurred to her that they might need to obtain increased coverage. She reviewed her policy, and she and her husband read an endorsement to their policy to indicate that increased, retroactive coverage would be provided on request within thirty days of completing construction.[3] Peerless and CHA contend that this endorsement does not apply to Plaintiffs' particular coverage. Plaintiffs believed that it did apply and, consequently, did not notify CHA of the renovations because they had not been finished on the date that the fire occurred. Peerless ultimately paid the policy limits of $139,000, but the actual replacement cost of the home was approximately $390,000.

Plaintiffs filed suit against CHA and Peerless in May 2005, alleging breach of contract and negligence. The complaint was amended in February 2006 to add a claim for negligent misrepresentation. Both defendants raised affirmative defenses, including

---

[2]  These negotiations occurred over the phone between Foley and Mrs. Ames.

[3]  Endorsement #80-2 (11/93) offers retroactive coverage when the increase in replacement cost exceeds 5%, so long as the company is notified of the change within 30 days of completion.

failure to state a claim upon which relief could be granted, estoppel, and waiver. CHA and Peerless now move for summary judgment on all of Plaintiffs' claims. Plaintiffs contend that genuine issues of material fact remain as to the state of their coverage at the time that they entered into the contract and at the time of the fire.

## DISCUSSION

### 1. Summary Judgment Standard.

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 22. At this stage, the facts are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63, 65.

### 2. Breach of Contract Claim.

To establish a valid, enforceable contract, both parties must agree "to be bound by all its material terms," and the agreement must be "sufficiently definite" for a court to determine its meaning and the parties' respective responsibilities under the law. *Sullivan v. Porter*, 2004 ME 134, ¶ 13, 861 A.2d 625, 631. CHA argues that it satisfied its obligation to procure insurance for Plaintiffs. Peerless argues that it was not contractually obligated to provide increased coverage to Plaintiffs after the fire because they did not have that type of insurance and never requested additional coverage.

3

Plaintiffs argue that they did not make such a request because they relied on the endorsement, believing that they already had purchased coverage for improvements.

Here, there is no dispute that Peerless and Plaintiffs had an insurance contract and that it did not provide coverage equivalent to the full replacement cost of the home, including improvements, at the time that it burned down. In his deposition, Foley indicated that Plaintiffs' policy included "replacement cost coverage," which covers the loss of the building up to the policy limits without a deduction for depreciation. Peerless also offers "replacement cost guarantee coverage," which goes beyond the policy limits, covering replacement cost, as well as any unexpected increased costs, such as building supplies and labor. Replacement cost guarantee coverage is reflected in the policy endorsement numbered 80-2. Although the 80-2 endorsement came with Plaintiffs' binder, in order for it to be effective, Foley explained that it would have to be listed on the policy's declaration page. The endorsement was not listed with Plaintiffs' declarations.

Plaintiffs argue that because the endorsement came with their policy, they reasonably believed that it applied and, therefore, they are entitled to compensation for the entire replacement value. The binder says that only those endorsements listed on the declarations page apply to that particular policy, and the 80-2 endorsement for replacement cost guarantee coverage is not listed. Both Mr. and Mrs. Ames admit that they did not thoroughly read the insurance binder, if they read it at all. They also concede that when they became concerned about additional coverage, they elected to review the policy themselves and did not contact CHA or Peerless. Nevertheless, Plaintiffs claim to have been confused because, despite the limiting language, an allegedly inapplicable endorsement was included with their policy. This reasonably could have created the impression that Plaintiffs had the coverage described in the

4

endorsement. There is a genuine issue of material fact as to whether Plaintiffs' reliance on the endorsement was reasonable and whether they are entitled to replacement cost guarantee coverage in light of that reliance; therefore, summary judgment on the claim against Peerless is denied.

Plaintiffs also argue that there was an oral contract with CHA to obtain top of the line coverage for them. Although they did not ask for replacement cost guarantee coverage specifically, there is a genuine issue of material fact as to whether their request for the "very best insurance" was sufficiently definite to give rise to an oral contract. As laypersons, they would not necessarily have known what the "best" coverage was, although Mr. Foley arguably understood this to mean "replacement cost guarantee coverage." Because contested factual issues remain regarding whether an oral contract existed between CHA and the Ameses, the summary judgment motion also is denied as to CHA on the claim for breach.

### 3. Negligence Claim.

A plaintiff bears the burden to establish a prima facie case for each element of a negligence cause of action, including that a duty existed and that the duty was breached, proximately causing damages. *Durham v. HTH Corp.*, 2005 ME 53, ¶ 8, 870 A.2d 577, 579 (citations omitted). A party has a duty of care when he or she "is under an obligation for the benefit of a particular plaintiff." *Quadrino v. Bar Harbor Banking & Trust Co.*, 588 A.2d 303, 304 (Me. 1991). Whether a duty of care exists is a legal question. *Pelletier v. Fort Kent Golf Club*, 662 A.2d 220, 222 (Me. 1995).

An insurance agent's duty of care generally is that found in a typical agency relationship, meaning the responsibility "to use reasonable care, diligence and judgment in obtaining the insurance coverage requested by the insured party." *Szelenyi v. Morse, Payson & Noyes Insurance*, 594 A.2d 1092, 1094 (Me. 1991). An agency

5

relationship alone, however, does not mean that the insurer is required to inform a potential insured about the sufficiency of the coverage. *Id.* Instead, the duty of the insurer is determined by "the terms of the agreement between the parties, interpreted in light of circumstances under which it is made." *Id.* (*citing* RESTATEMENT (SECOND) OF AGENCY § 376).

Under *Szelenyi*, CHA had a duty to exercise reasonable care in obtaining adequate coverage for Plaintiffs. They contend that CHA and Peerless breached their duty to provide the best available insurance coverage for their home, as they had requested. CHA and Peerless argue that they did provide the best possible coverage, given the age of the home, its proximity to the ocean, and the occasional rentals planned by Plaintiffs. Yet, Foley testified that his typical practice is to attempt to procure a replacement cost guarantee policy for potential insureds, as it is the best coverage available. He explained that he believed Plaintiffs were not eligible for that, given the nature and uses of the property, so he never attempted to obtain it. Whether CHA breached its duty by not seeking replacement cost guarantee coverage is inherently a factual dispute material to the resolution of this case.

In addition, Peerless argues that it cannot be liable if CHA breached its duty because CHA was an independent seller of insurance and its agency relationship with Peerless did not arise until after the application process. Whether the agency relationship between CHA and Peerless began before or after CHA issued the Peerless policy is also a question of fact bearing on vicarious liability. Summary judgment on the negligence claim is denied.

     4.     <u>Misrepresentation Claim</u>.

Negligent misrepresentation occurs when "[o]ne who, in the course of his business, profession or employment, or in the other transaction in which he has a

6

pecuniary interest, supplies false information, for the guidance of others in their business transaction [and losses result from] their justifiable reliance upon the information." RESTATEMENT (SECOND) OF TORTS § 552(1) (1977). The standard of care for liability is whether the person who provides the false information "fails to exercise reasonable care or competence in obtaining or communicating the information." *Id.* Maine follows the Restatement's definition. *Binette v. Dyer Library Assn.*, 688 A.2d 898, 903 (Me. 1996).

Here, Plaintiffs contend that because the 80-2 endorsement was included in their binder, they were mislead into thinking that it applied to them and, therefore, they did not obtain increased coverage before the fire. CHA and Peerless argue that because the binder stated that it did not apply, no misrepresentation occurred. Viewing the facts most favorably to Plaintiffs, the inclusion of an endorsement that did not apply to them could lead a fact finder to conclude that Peerless and/or CHA did not exercise reasonable care when communicating with Plaintiffs. Whether they actually did exercise reasonable care is a question of fact that cannot be resolved at the summary judgment stage.

Lastly, CHA and Peerless contend that Plaintiffs should be barred from recovering for negligent misrepresentation because they made false and/or misleading statements on the insurance application. The application notes that Mrs. Ames did not smoke and that the home would only be rented for one week per year, which are both incorrect statements that may have affected coverage. Plaintiffs admit that this misinformation was listed, but stated that they did not know why, and they denied making false statements. The application was completed over the telephone. While these issues may bear on Plaintiffs' credibility at trial, they do not operate to legally bar the misrepresentation claim. Summary judgment is denied on this claim.

7

The entry is:

Defendants' motions for summary judgment are DENIED.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATE: 4/30/07

G. Arthur Brennan
Justice, Superior Court

Graydon G. Stevens, Esq. - PLS
Thomas S. Marjerison, Esq. - DEF. PEERLESS INSURANCE COMPANY
Barry T. Woods, Esq. - DEF. COLE-HARRISON AGENCY

8