ENTERED OCT 2 4 2014



STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. PORSC-CV-12-434
3/24/2014

MARK CHARTIER,

    Plaintiff

    v.

FARM FAMILY LIFE
INSURANCE CO., et. al.

    Defendants

ORDER ON MOTIONS FOR
SUMMARY JUDGMENT

STATE OF MAINE
Cumberland ss Clerk's Office

MAR 25 2014

RECEIVED

Plaintiff Mark Chartier seeks damages from both Farm Family Life Insurance, Co. ("Farm Family") and Gorham Savings Bank for allowing his then wife, Lisa Heward, to cash out an annuity policy from Farm Family and deposit it in a joint checking account with Gorham Savings Bank without plaintiff's signature. Defendant Farm Family and its agent Joseph Miller have moved for summary judgment, arguing that they had no duty to monitor Mr. Chartier's account. Defendant Gorham Savings Bank has separately moved for summary judgment, arguing that the bank had no duty to require Mr. Chartier's signature on a check before depositing it into his account. A hearing was held on January 2, 2014.

### Factual and Procedural Background

The following facts are not in dispute. Mark Chartier was married to Lisa Heward from June 17, 2001 to November 17, 2011. (Farm Supp. S.M.F. ¶ 6.)[1] On October 16,

---

[1] Because two motions for summary judgment are before the Court, "Farm" and "GSB" are used to distinguish between the statements of material fact.

2002, Mr. Chartier and Lisa Heward opened a joint checking account with Gorham Savings Bank. (GSB Supp. S.M.F. ¶ 1.)

In 2004, Defendant Joseph Miller from Farm Family began providing Mr. Chartier with insurance. (Pl.'s Farm Add. S.M.F. ¶ 1.) In 2006, Mr. Chartier realized a large amount of money from his father's estate. (Pl.'s Farm Add. S.M.F. ¶ 7.) He contacted Mr. Miller for financial advice, and Mr. Miller came to Mr. Chartier's house on March 13, 2006 to discuss investment options. (Pl.'s Farm Add. S.M.F. ¶ 10.) Mr. Miller recommended an investment package that included a $100,000 annuity from Farm Family, and Mr. Chartier followed his advice. (Pl.'s Farm Add. S.M.F. ¶¶ 13, 15.) On September 8, 2009, Mr. Chartier designated his then-wife Ms. Heward as the primary beneficiary of the annuity policy. (Farm Supp. S.M.F. ¶ 5.)

In addition to the annuity, Mr. Miller recommended that Mr. Chartier invest a portion of his money into an American Funds[2] mutual fund. (Pl.'s Farm Add. S.M.F. ¶ 13.) Mr. Chartier invested $250,000 into the mutual fund held in a joint account between him and his wife. (Pl.'s Farm Add. S.M.F. ¶¶ 13-15.) Shortly after their purchase, Mr. Chartier alleges that Ms. Heward began withdrawing funds from the mutual funds account without Mr. Chartier's knowledge.[3] (Pl.'s Farm Add. S.M.F. ¶ 16).

On October 12, 2009, Ms. Heward contacted Mr. Miller to discuss the penalties and tax consequences of cashing the annuity policy. (Pl.'s Farm Add. S.M.F. ¶ 24.) After the conversation, Farm Family mailed Ms. Heward the necessary form to cash out the policy. (Pl.'s Farm Add. S.M.F. ¶ 27) Ms. Heward signed the form for Mr. Chartier, although the parties dispute whether he authorized her to sign for him. (Pl.'s Farm Add.

---

[2] The Court dismissed American Funds as a defendant at the January hearing. *See* Order 1/2/14.
[3] Farm Family disputes whether Mr. Chartier had knowledge of Ms. Heward's withdrawals. (Farm Reply S.M.F. ¶ 16.)

2

S.M.F. ¶ 27; Farm Reply S.M.F. ¶ 27.) When Farm Family received the form, it issued a check for $109,669.49 payable to Mr. Chartier and mailed the check addressed to him at his legal address on record with the company. (Farm Supp. S.M.F. ¶ 16; Pl.'s Farm Add. S.M.F. ¶ 28.)

Ms. Heward intercepted the check without Mr. Chartier's knowledge. (Pl.'s Farm Add. S.M.F. ¶ 28.) She deposited the check in their joint checking account at Gorham Savings Bank on October 26, 2009. (GSB Supp. S.M.F. ¶ 4.) The check was not endorsed but was marked "For Deposit Only." (GSB Supp. S.M.F. ¶ 5; Pl.'s GSB Add. S.M.F. ¶ 7.) Gorham Savings Bank had previously accepted Mr. Chartier's unendorsed checks for deposit without complaint from Mr. Chartier. (GSB Supp. S.M.F. ¶ 6.) On November 9, 2009, Ms. Heward withdrew $40,000 from the joint account, moved out of the marital home, and told Mr. Chartier she wanted a divorce. (Farm Supp. S.M.F. ¶ 20; Pl.'s Farm Add. S.M.F. ¶ 29.) Ms. Heward was never charged for her actions described in this case. (Farm Supp. S.M.F. ¶ 25.)

Mr. Chartier filed a complaint on October 19, 2012 and amended the complaint on January 9, 2013. He brings three counts: count I, breach of fiduciary duty; count II, breach of the implied covenant of good faith and fair dealing; and count III, negligence. Farm Family filed its motion for summary judgment on September 24, 2013 followed by Gorham Savings Bank's motion on September 25, 2013.

## Discussion

### 1. Summary Judgment Standard

"Summary judgment is appropriate when there is no genuine issue of material fact that is in dispute and, at trial, the parties would be entitled to judgment as a matter of

3

law." *Fitzgerald v. Hutchins*, 2009 ME 115, ¶ 9, 983 A.2d 382 (citing *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821). "An issue is genuine if there is sufficient evidence supporting the claimed factual dispute to require a choice between the differing versions; an issue is material if it could potentially affect the outcome of the matter." *Brown Dev. Corp. v. Hemond*, 2008 ME 146, ¶ 10, 956 A.2d 104 (citing *Univ. of Me. Found. v. Fleet Bank of Me.*, 2003 ME 20, ¶ 20, 817 A.2d 871). To survive a defendant's motion for summary judgment, "the plaintiff must establish a prima facie case for each element of her cause of action." *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897.

2.    Farm Family's Motion for Summary Judgment

   a.   Duty

Defendant Farm Family argues that it did not owe Mr. Chartier a duty to notify him about Ms. Heward's actions to cash out the annuity policy. Plaintiff concedes that ordinarily an insurance agent does not owe a continuing duty to a customer after the customer buys insurance. *See Szelenyi v. Morse, Payson & Noyes, Inc.*, 594 A.2d 1092, 1094 (Me. 1991). Plaintiff argues that this case involves a "special agency" relationship between Mr. Chartier and Mr. Miller that justifies imposing such a duty on Mr. Miller and Farm Family. *See id.* ("Before such a duty can arise, a special agency relationship must exist between the parties.").

In *Szelenyi*, the Law Court cited to the Wisconsin case *Nelson v. Davidson*, which articulated some of the factors courts use when determining whether a special agency relationship exists. These factors include: 1) an express agreement, 2) an established relationship of trust "from which it clearly appears the agent appreciated the duty of giving advice," 3) compensation for the advisement role, and 4) particular expertise of

4

the agent that the insured detrimentally relies on. *Nelson v. Davidson*, 456 N.W.2d 343, 347 (Wis. 1990). The Wisconsin Supreme Court found that "[t]he mere allegation that a client relied upon an agent and had great confidence in him is insufficient to imply the existence of a duty to advise." *Id.*

The facts Mr. Chartier relies on are insufficient to establish a special agency relationship. Mr. Chartier emphasizes that Mr. Miller personally came to his house to discuss insurance policies or inform Mr. Chartier that coverage had lapsed. That Mr. Miller used face-to-face conversations to do business does not establish that he undertook a duty to monitor transactions on Mr. Chartier's account. Next, Mr. Chartier argues that he specifically sought out Mr. Miller's advice in 2006 and that, by providing investment advice, Mr. Miller undertook a duty to warn of any suspicious activity regarding any of the investments. There is no evidence that Mr. Miller was compensated for his investment advice beyond the fee he normally collects. There is no evidence of any agreement between Mr. Miller and Mr. Chartier about Mr. Miller's role as a financial advisor. There is nothing in the record that shows Mr. Chartier relied on any particular expertise of Mr. Miller. Given these facts, there is insufficient evidence that a special agency relationship existed between Mr. Chartier and Mr. Miller.

Even if the Court were to accept Mr. Chartier's argument that a special duty exists in this case, Mr. Chartier has failed to identify the scope of the duty. "[E]xpert testimony is required where the subject presented is beyond the scope of knowledge of the average layperson." *Reid v. Reid*, 2006 WL 522256, at *2 (Me. Super. Feb. 17, 2006) (citing *Lemay v. Burnett*, 660 A.2d 1116, 1117 (N.H. 1995). Mr. Chartier did not designate an expert witness to identify what Farm Family should have done differently. When Ms.

5

Heward inquired about cashing out the annuity policy, Farm Family sent the necessary form, which required Mr. Chartier's signature. When Farm Family received the signed form it compared the signature on it to a signature the company had on file from Mr. Chartier. The average layperson would not be able to identify whether some additional duty, such as personal contact, is required or even feasible in this situation.

Because Mr. Chartier has failed to establish that Mr. Miller or Farm Family owed him any duty in this case, Farm Family is entitled to judgment on all three counts of the complaint.

3.     Gorham Savings Bank's Motion for Summary Judgment

Mr. Chartier argues that Gorham Savings Bank is liable for depositing a check payable to him without his endorsement.

a.   Breach of Fiduciary Duty

Mr. Chartier's first count is for breach of fiduciary duty. Generally a bank-depositor relationship does not give rise to a fiduciary duty. *See Donovan v. Bank of Am.*, 574 F. Supp. 2d 192, 204 (D. Me. 2008). To demonstrate a fiduciary relationship, a plaintiff must show a "diminished emotional or physical capacity or . . . the letting down of all guards and bars." *Stewart v. Machias Sav. Bank*, 2000 ME 207, ¶ 11, 762 A.2d 44 (quoting *Diversified Foods, Inc. v. First Nat'l Bank of Boston*, 605 A.2d 609, 615 (Me. 1992)). Mr. Chartier merely states that he "trusted Gorham Savings Bank to manage his checking account in a manner that protected his assets." (Pl.'s GSB Add. S.M.F. ¶ 15.) This mere allegation is insufficient by itself to generate an issue of fact on the existence of a fiduciary relationship. *See Stewart*, 2000 ME 207, ¶ 11, 762 A.2d 44 (stating that an

6

allegation of trust alone is insufficient to demonstrate a confidential relationship).

Gorham Savings Bank is entitled to judgment on count I of Mr. Chartier's complaint.

    b.  <u>Breach of Implied Covenant of Good Faith and Fair Dealing</u>

The second count of plaintiff's complaint alleges a breach of the implied covenant of good faith and fair dealing. Maine's version of the U.C.C. "imposes a duty of good faith and fair dealing by banks, requiring 'honesty in fact in the conduct or transaction concerned.'" *First NH Banks Granite State v. Scarborough*, 615 A.2d 248, 250 (Me. 1992) (quoting *Diversified Foods, Inc.*, 605 A.2d at 613). This duty does not extend beyond what is required by Maine's version of the U.C.C. *Id.* at 251.

In this case, Mr. Chartier cannot show a breach of duty on the part of the bank. Under Maine law:

> If a customer delivers an item to a depositary bank for collection:
> (1) The depositary bank becomes a holder of the item at the time it receives the item for collection if the customer at the time of delivery was a holder of the item, *whether or not the customer indorses the item* . . . and
> (2) The depositary bank warrants to collecting banks, the payor bank or other payor and the drawer that the amount of the item was paid to the customer or deposited to the customer's account.

11 M.R.S. § 4-205 (2013) (emphasis added). Indorsement is not required. In addition, the Deposit Account Agreement between Mr. Chartier and the bank allows each joint owner of the account to take action on the account. (GSB Supp. S.M.F. ¶ 3.) Ms. Heward was a joint owner on the account. Therefore, the bank did not act improperly by accepting a check from one joint owner on behalf of another joint owner on the account. Gorham Savings Bank is entitled to judgment on count II of Mr. Chartier's complaint.

    c.  <u>Negligence</u>

7

Finally, Mr. Chartier asserts a negligence claim against the bank. As discussed above, the bank did not owe Mr. Chartier any special duty in this case. Because Maine law, the deposit agreement, and the prior conduct of the parties all allowed the bank to accept an unendorsed check for deposit, Mr. Chartier cannot prevail on a negligence claim. To the extent Mr. Chartier is asserting that the bank owed a different duty to protect against fraudulent transactions, Mr. Chartier has failed to designate an expert in this case to articulate what such a duty requires. Accordingly, Gorham Savings Bank is entitled to judgment on count III of Mr. Chartier's complaint.

The entry is:

- Defendant Farm Family's motion for summary judgment is GRANTED on all counts of the complaint
- Defendant Gorham Savings Bank's motion for summary judgment is GRANTED on all counts of the complaint

Date:   March 24, 2014

Joyce A. Wheeler
Justice, Superior Court

8

Plaintiff-Anthony Sineni Esq
Defendant Farm Family/J. Miller-Paul Douglass Esq
Defendant Gorham-Thad Zmistowski Esq