kSTATE OF MAINE                                   BUSINESS & CONSUMER COURT
CUMBERLAND, ss.                                   DOCKET NO. BCD-CV-2019-24

YANKEE PRIDE TRANSPORTATION        )
AND LOGISTICS, INC.                )
                                   )
                    PLAINTIFF,     )      **ORDER ON UIG, INC.'s MOTION FOR**
          v.                       )      **SUMMARY JUDGMENT**
UIG, INC.                          )
                                   )
                    DEFENDANT.     )

 

Before the Court is Defendant UIG, Inc.'s Motion for Summary Judgment pursuant to M. R. Civ. P. 56 on all claims asserted by Plaintiff Yankee Pride Transportation and Logistics, Inc. ("Yankee Pride"). In its Second Amended Complaint, Yankee Pride brought claims for negligence, breach of contract, and breach of fiduciary duty relating to UIG's alleged failure to procure insurance. Yankee Pride is represented by Attorneys Lee Bals and George Marcus. UIG, Inc. (UIG) is represented by Attorney Sigmund Schutz.

## UNDISPUTED FACTS

As of 2018, Yankee Pride was a small trucking corporation based in Maine and authorized to haul freight in all 50 states. (Def.'s S.M.F. ¶¶ 1, 2). Yankee Pride was formed in December 2012 by its sole owner and shareholder Larry Sidelinger, a Maine resident. (Def.'s S.M.F. ¶¶ 3, 4, 6). As of the end of 2018 or early 2019, Yankee Pride had 3-4 trucks and a number of trailers. (Def.'s S.M.F. ¶ 8). Mr. Sidelinger has been in the trucking business for 30 years, and prior to founding Yankee Pride, Mr. Sidelinger owned a different entity, similarly named Yankee Pride Transportation, Inc. (Def.'s S.M.F. ¶¶ 14, 40). In addition to Yankee Pride, Mr. Sidelinger is the sole owner and shareholder in a second entity, Yankee Truck Brokers, Inc. ("YTB"), formed in 2006. (Def.'s S.M.F. ¶¶ 15-18). YTB is in the business of brokering loads of

1

freight and has a practice of transferring its year end profits into Yankee Pride, despite filing its own tax returns and maintaining its own financials, books, and records. (Def.'s S.M.F. ¶ 19-23).

Yankee Pride formerly had a business relationship with UIG, an insurance agency with an office in Madawaska, Maine. (Def.'s S.M.F. ¶ 55) As such, UIG, through its employee Karie Michaud, sold Yankee Pride a motor carrier insurance policy with Great West Casualty Company ("Great West") for the period of December 27, 2017 to December 27, 2018. (Def.'s S.M.F. ¶ 48) In exchange, Great West paid UIG a commission for the sale. (Def.'s S.M.F. ¶ 64)

In February 2018, Great West issued a notice of nonrenewal to Yankee Pride purporting to terminate the policy at its expiration date. (Def.'s S.M.F. ¶ 83) Great West's reasons for nonrenewal were that Yankee Pride did not have a good safety record and had a number of accidents. (Def.'s S.M.F. ¶ 81) Great West's records include a copy of a notice of nonrenewal addressed to Yankee Pride and a certificate of mailing showing that it mailed notice to Yankee Pride. (Def.'s S.M.F. ¶ 78-79) In response to receiving the notice of nonrenewal, Ms. Michaud called a Great West underwriter, Craig Harmon, to ask if Yankee Pride's nonrenewal could be revisited. (Def.'s S.M.F. ¶ 83) Mr. Harmon said that he might revisit the policy closer to the policy's expiration date and advised her to contact him then. (Def.'s S.M.F. ¶ 84) Ms. Michaud agreed, and eventually followed up with Mr. Harmon around December 21, 2018. (Def.'s S.M.F. ¶ 85)

On December 21, 2018, Ms. Michaud spoke with Mr. Sidelinger via email, explaining that she had not heard back from Mr. Harmon, and expressing discouragement at Yankee Pride's insurance prospects generally. (Def.'s S.M.F. ¶¶ 89-91) Mr. Sidelinger asked if he should shop around with other insurance agencies and began doing so that day. (Def.'s S.M.F. ¶¶ 92-93) Mr. Sidelinger contacted four other agencies: HUB Insurance, Cross Insurance, Haylor, and Prime.

(Def.'s S.M.F. ¶ 93, 112-117) Of these insurers, HUB made significant efforts to find a policy for Yankee Pride but was unsuccessful. By January 15, HUB told Mr. Sidelinger that it had been unable to find a replacement policy. (Def.'s S.M.F. ¶¶ 99-105)

Although Great West considered whether to reinstate Yankee Pride's policy as requested, it declined to do so because of "an increase in claims activity and frequency of loss. . .late reporting of claims by Yankee Pride", and a disputed incident of nondisclosure. (Def.'s S.M.F. ¶ 98) Mr. Sidelinger received insurance quotes from both HUB and UIG but rejected them because the pricing was unacceptable. (Def.'s S.M.F. ¶¶ 105-107, 110-11) At the end of January, HUB found insurance for Yankee Pride, but the policy was limited to a 200-mile operating radius. (Def.'s S.M.F. ¶¶ 102, 119) However, by this point Yankee Pride had suffered a one-month gap in insurance coverage and went out of business by the end of 2019. (Def.'s S.M.F. ¶¶ 120, 130)

In response to UIG's failure to provide Yankee Pride with affordable insurance coverage, Yankee pride asserts UIG is to blame for it having to close the business. Yankee Pride filed its Second Amended Complaint, containing claims for negligence, breach of contract, and breach of fiduciary duty while seeking damages for its lost profits and also the value of its business.

## STANDARD OF REVIEW

A party is entitled to summary judgment pursuant to M. R. Civ. P. Rule 56(c) when the summary judgment record reflects there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. M.R. Civ. P. 56(c). A fact is material if it has the potential to affect the outcome of the suit, and a genuine issue of material fact exists when a fact-finder must choose between competing versions of the truth, even if one party's version appears more credible or persuasive. *F.R. Carroll, Inc. v. T.D. Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646 (quoting *Wightman v. Springfield Terminal Ry. Co.,* 100 F.3d 228, 230 (1st Cir. 1996). Each

party's statements must contain a reference to the record where "facts as would be admissible in evidence" may be found. M. R. Civ. P. 56(e). When the plaintiff is opposing summary judgment, it must establish a prima facie case for every element of each claim. *Tri-Town Marine, Inc. v. J.C. Milliken Agency, Inc.,* 2007 ME 67, ¶ 7, 924 A.2d 1066. The evidence offered in support of a genuine issue of material fact "need not be persuasive at that stage, but the evidence must be sufficient to allow a fact finder to make a factual determination without speculating." *Estate of Smith v. Cumberland Cty.,* 2013 ME 13, ¶ 19, 60 A.3d 759.

## DISCUSSION

In its motion for summary judgment, UIG contends that: 1) UIG did not breach a duty owed to Yankee Pride, 2) even if UIG did breach a duty to Yankee Pride that breach was not the proximate cause of Yankee Pride's damages, and 3) Yankee Pride cannot recover the kind of damages it seeks.

Yankee Pride bases its negligence claim on either a breach of an insurance agent's standard duty to its customer, or breach of a special duty established by the conduct of the parties. Yankee Pride also contends that UIG breached a contractual duty and a fiduciary duty. The existence, and breach of, each of these duties will be addressed in turn.

I.    **Count I- Negligence**

A cause of action for negligence has four elements: (1) a duty of care owed to the plaintiff; (2) a breach of that duty; (3) an injury; and (4) causation, that is, finding that the breach of the duty of care was the cause of the injury." *Bell v. Dawson,* 2013 ME 108, ¶ 17, 82 A.3d 827. Therefore, for Yankee Pride to succeed on its negligence claim, it must establish that UIG owed it a duty of care and breached that duty. In support of its claim, Yankee Pride asserts that UIG had a duty to attempt

4

to secure insurance for Yankee Pride in a timely and competent manner, as well as a "special agency relationship" duty, both of which UIG breached.

Under Maine law, "an insurance agent generally assumes only those duties found in an ordinary agency relationship, that is, to use reasonable care, diligence and judgment in obtaining the insurance coverage requested by the insured party." *Szelenyi v. Morse, Payson, & Noyes Ins.,* 594 A.2d 1092, 1094 (Me. 1991). Before further duties arise, a special agency relationship must exist between the parties. *Id.* The existence and extent of the duties of the agent to the principle are determined by the terms of the agreement between the parties, interpreted in light of the circumstances under which it is made. *Id.* (citing *Restatement (Second) of Agency* § 376 1959)). The agent's duties are based on the manifestations of consent of the parties and ordinarily must be inferred from the parties' conduct. *Id.*

As the parties recognize, the facts of *Szelenyi* are different than the facts laid out in the Summary Judgment record in this matter. In *Szelenyi,* the allegation involved the duty of an insurance agent to advise an insured party about the *adequacy* of insurance coverage. While finding that no such duty existed in an ordinary insurance agency relationship, the Law Court took the opportunity to describe the duty inherent in an "ordinary agency relationship" duty as stated in the above paragraph. The Law Court did allude to the possibility that a "special agency relationship" could create such a duty, even in an "adequacy of coverage" case such as *Szelenyi,* but it did not give precise guidance as to what must be alleged or proven for such a "special agency relationship" to exist that might give rise to such a duty. It did state that a court must look to the terms of the agreement between the parties, interpreted in the light of the circumstances under

which it is made, as well as the manifestation of consent of the parties, and should ordinarily be inferred from the parties' conduct .[1]

Yankee Pride asserts that a special agency relationship existed between it and UIG, based on the long-standing relationship between the parties, where UIG would take steps each year to renew Yankee Pride's insurance policy, or procure a new one. (Pl.'s Am. Compl. ¶ 46) In addition, it alleges that UIG "held itself out as having expertise in insurance trucking issues and Larry Sidelinger relied upon that expertise." [Plaintiffs' Opposition to Motion]. However, it cites to no authority for why a long-standing relationship would be enough to create a special agency relationship. The Court is not persuaded based upon any undisputed facts in the Summary Judgment record that any such "special agency" relationship existed between the parties. The undisputed facts illustrate a traditional relationship between a business purchasing insurance through an insurance agent that sold insurance for such a business. All trucking companies require insurance to operate, and Mr. Sidelinger had over thirty years of experience running such a company. The undisputed facts in the record indicate that Mr. Sidelinger reviewed his policies when they were received, and had no trouble understanding the need for insurance and the adequacy and affordability of the policies he reviewed. The Court concludes that Plaintiffs have failed to establish a prima facie case as to the element of a "special agency relationship." It can point to no conduct other than the length of the parties' business relationship which the Court finds to be insufficient as a matter of law to creates a  heightened duty on the part of the Defendant.

With respect to whether UIG violated the duty defined in *Szelenyi* for an "ordinary agency relationship", namely to use "reasonable care, diligence and judgment in obtaining the insurance

---

[1] The Law Court has also recognized, as Defendant points out, that an insurance agency has no duty to provide notice of nonrenewal to an insured, instead placing that obligation on the insurer. *Sunset Enterprise v. Webster and Goddard, Inc.* 556 A.2d 213, 215 (Me. 1989). See also, *Dyler v. Bowan,* 2003 WL 21387167, at *1 (Me. Super .May 7, 2003).

coverage requested by the insured party, Plaintiffs define the duty as requiring UIG to use reasonable diligence in procuring insurance coverage to replace the Great West insurance that expired on December 27, 2018. (Pl.'s Am. Compl. ¶ 47) Further, Yankee Pride asserts that UIG had a duty to inform it promptly if it was unable to obtain the requested insurance, and to ensure it understood that a Notice of Nonrenewal of Insurance had been issued., and its implications. (Pl.'s Am. Compl. ¶¶ 48, 49).

At the outset, it must be noted that even Plaintiffs agree UIG had no duty under Maine law to provide the notice of renewal to them. In addition, it is undisputed that upon receipt of Great West's Notice of Nonrenewal, Ms. Michaud, on behalf of UIG, reached out to renegotiate and renew the policy. Great West asked Ms. Michaud to contact it closer to the policy's expiration date, and Ms. Michaud did so. Ms. Michaud expressed discouragement to Mr. Sidelinger when she did not hear back from Great West's representative, Mr. Harmon, and Mr. Sidelinger began to shop around with other insurance agents. Despite being unsuccessful in renewing Yankee Pride's policy with Great West, UIG began searching for a replacement policy that would suit Mr. Sidelinger and Yankee Pride's needs but was again unsuccessful.

Maine law does not impose a duty on insurance agents to *successfully* acquire coverage for their clients. Rather, insurance agents have a duty to "use reasonable care, diligence and judgment in obtaining the insurance coverage requested by the insured party." *Szelenyi,* 595 A.2d at 1094 (Me. 1991). The Court concludes Plaintiffs have failed to generate any disputed issue of material fact that UIG breached its duty as defined by *Szelenyi,* and further concludes that no reasonable juror could find that such a duty was breached. Accordingly, the Court grants UIG's motion for summary judgment on Count I of Yankee Pride's Second Amended Complaint.

**Count II- Breach of Contract**

In support of its breach of contract claim, Yankee Pride asserts that a contract existed between the parties requiring UIG to procure insurance for Yankee pride and to notify Yankee Pride in a reasonable time period if it was unable to do so. (Pl.'s Am. Compl. ¶¶ 53, 54) Plaintiff asserts that because UIG failed to procure insurance for Yankee Pride or advise it within a reasonable period of time that it failed to do so, UIG breached the contract, causing Yankee Pride to suffer damages. The parties agree that no written contract exists contract between them spelling out their obligations. Instead, as it did when asserting the existence of a "special agency relationship" Yankee points to its long-standing business relationship with UIG, pursuant to which UIG would secure insurance for Yankee Pride in a timely and competent manner.

Any action to enforce a contract necessarily depends on the existence of a contract itself. "A contract exists if the parties mutually assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite to enable the court to ascertain its exact meaning and fix exactly the legal liabilities of each party." *Sullivan v. Porter,* 2004 ME 134, ¶ 13, 861 A.2d 625. Contracts may be implied from the parties' conduct. *Stanton v. Univ. of Maine Sys.,* 2001 ME 96, ¶ 12, 773 A.2d 1045. "Generally, the existence of a contract is a question of fact to be determined by the jury." *Sullivan,* 2004 ME 134, ¶ 13, 861 A.2d 625. However, when a plaintiff fails to allege facts that generate a genuine issue whether a contract exists, summary judgment is proper. *See Stanton,* 2001 ME 96, ¶ 14, 773 A.2d 1045.

8

As previously stated, Yankee Pride contends that the existence of a contract between parties could be inferred from the parties' conduct, specifically the nature of their business relationship. However, even if the nature of the parties' business relationship establishes an agreement whereby UIG would annually secure insurance on Yankee Pride's behalf, Yankee Pride cannot point to any other "term" of the contract apart from UIG's locating liability insurance for Yankee Pride from various insurance companies over a period of years. The summary judgment record is otherwise silent with respect to any other specific, agreed-upon terms regarding either party's obligations, including price, deductibles, or deadlines by which UIG was expected to perform any obligation under any contract. In addition, under this arrangement, Plaintiffs paid nothing to UIG as it was paid a commission from the insurer. Further,  Yankee Pride was free at any time to purchase insurance through any other agency, and UIG's obligations were essentially limited to offering options for policies which could be rejected for any reason by the Plaintiffs, including for affordability.

As the Court noted with respect to the issue of the "special agency relationship". UIG was never under any obligation on the part of UIG to successfully match Plaintiff with a policy. It is undisputed that UIG never guaranteed that it would locate a policy that met all of the Plaintiff's changing needs. Because Plaintiffs have failed to point to generate any facts in the record as to the existence of any such "sufficiently definite" term creating an enforceable contract between the parties, the Court will grant Defendant's motion as to Count II, Breach of Contract.


## II.     Count III- Breach of Fiduciary Duty

Finally, UIG moves for summary judgment with respect to Count III of the Second Amended Complaint, which asserts a cause of action for breach of fiduciary duty. Yankee Pride asserts that

a jury could reasonably conclude that UIG, acting as Yankee Pride's agent, held itself out as an expert in trucking insurance, that Yankee Pride did not have expertise in trucking insurance, and that Yankee Pride relied on UIG's expertise to secure insurance. Conversely, UIG contends that as a matter of law, no fiduciary duty existed.

In Maine, the elements of a fiduciary relationship are: (1) the actual placing of trust and confidence in fact by one party in another and (2) a great disparity of position and influence between the parties at issue." *Stewart v. Machias Savings Bank,* 2000 ME 207, ¶ 10, 762 A.2d 44. The disparity of position also requires "diminished emotion or physical capacity or. . . the letting down of all guards and bars. *Id.* at ¶ 11. The law also requires that there be a reasonable basis for the placement of trust and confidence in the superior party "in the context of specific events at issue." *Bryant v. Watchtower Bible and Tract. Soc. of N.Y. Inc.,* 1999 ME 144, ¶ 20.

Although UIG was undoubtedly more knowledgeable about the sale of insurance than its customer Yankee Pride, this dynamic is commonplace in relationships between a salesperson and customer. Obviously, disparity in knowledge and expertise would seem to be the point of going to an insurance agency to buy an insurance product in the first place. Yankee Pride has not established any disputed issue of material fact upon which any juror or factfinder could find the kind of "great disparity of position and influence" between the parties such that a fiduciary duty could be inferred. *Stewart v. Machias Savings Bank,* 2000 ME 207, par. 10. Further, Yankee Pride has not created a genuine issue of fact suggesting the existence of "a diminished emotional or physical capacity, or the letting down of all guards and bars" *Id.* at par. 11. To the contrary, once it appeared clear that it would be impossible to find coverage through UIG, Plaintiffs began to shop around with other insurance agents, and also considered buying from a high risk pool. Those efforts failed as they turned out to be prohibitively expensive. (Def.'s S.M.F. ¶¶ 92-93) Yankee

Pride has failed to establish a prima facie case to satisfy the elements of a breach of fiduciary duty as a matter of law, and UIG's motion for summary judgment will be granted regarding Count III.[2]

## CONCLUSION

For the foregoing reasons, the Court finds that Yankee Pride has on this record failed to establish genuine issues of material facts as to whether UIG breached any duty it owed to Yankee Pride when UIG failed to find an insurance policy that met Plaintiffs' changed circumstances.

The entry will be: Defendant UIG's motion for summary judgment is GRANTED on all Counts. The Clerk is instructed to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).


**November 17, 2020**                                    **/s**
**Date**                                    **M. Michaela Murphy, Justice**
                                    **Business and Consumer Court**

---

[2] The Court notes that UIG has also moved for summary judgment due to a lack of causation linking UIG's failure to secure insurance with Yankee Pride's alleged damages. Because the Court has found that UIG did not breach any duty to Yankee Pride, the Court need not address whether UIG's actions were the proximate cause of Yankee Pride's damages.

BCDWB-CV-2019-24

*YANKEE PRIDE TRANSPORTATION AND LOGISTICS, INC.*

*v.*

*UIG, INC.*

Party Name:                                    Attorney Name:

*Yankee Pride Transportation and Logistics, Inc.*     **George Marcus, Esq.**
                                               Marcus Clegg
                                               16 Middle St, Suite 501
                                               Portland, ME 04101

*UIG, In.*                                     **Sigmund Schutz, Esq.**
                                               Preti Flaherty
                                               One City Center
                                               PO Box 9546
                                               Portland, ME 04112